Hugh M. Ray, III
Lawrence James Dickinson
Pillsbury Winthrop Shaw Pittman, LLP
Two Houston Center
909 Fannin, Suite 2000
Houston, TX 77010-1028
Tel: (713) 276-7600
*Counsel for the Plaintiffs*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § § | |
| EFO Holdings, L.P., | § § § | Case No. 12-37936-swe-7 |
| Debtor. | § § | |

| | | |
|---|---|---|
| Scott M. Seidel, the chapter 7 Trustee, *et al*., | § § § | |
| Plaintiffs | § § | |
| vs. | § § | Adversary No. 21-03043-swe |
| William Esping, *et al*., | § § § | |
| Defendants. | § § | |

**PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF QUICKBOOKS FILES**

# Contents

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF QUICKBOOKS FILES ................. 1
I.   SUMMARY ............................................................................................................................ 3
II.  HISTORY OF THE CASE SHOWS CONCEALMENT IS ROUTINE ............................... 5
III. BACKGROUND ................................................................................................................... 7
    A. State Court Order to Produce QuickBooks Files .......................................................... 7
    B. Request for Production of Additional QuickBooks Files ............................................. 8
IV.  LEGAL STANDARD ........................................................................................................... 9
V.   ARGUMENT ...................................................................................................................... 10
    A. EFO GP Must Produce QuickBooks Files for the Missing Entities Because It Is Relevant Information and Not Burdensome ................................................................ 10
    B. Defendants Must Produce QuickBooks Files for the Maneuvering Entities Because They Are Relevant to the Plaintiffs' Claims and Proportional to the Needs of the Case .......... 11
        1. WPE Kids, WPE GP, and WPE Holdings ............................................................. 12
        2. EFO Management, Entity Manager, PMC Irrevocable Trust, CME Trust, MHE Trust, and WPE Jr. Trust .................................................................................................. 13
        3. EFO HMI and MDT2 ............................................................................................. 14
        4. EFO Financial ........................................................................................................ 15
        5. Eminence and Eminence GP .................................................................................. 15
        6. Green Series and JBJ ............................................................................................. 16
    C. The Estate Has at Least Some Interest in the QuickBooks License Purchased by EFO GP
        18
    D. Defendants' Offer to Produce Limited Documents Is Insufficient ............................. 19
VI.  RELIEF REQUESTED ....................................................................................................... 19

TO THE HONORABLE SCOTT W. EVERETT, U.S. BANKRUPTCY JUDGE:

Plaintiffs[1] submit this *Motion to Compel Production of QuickBooks Files* ("Motion")[2] and in support thereof state as follows:

### I.    SUMMARY

1. This is a motion to compel the following: (i) the QuickBooks file of fourteen (14) entities formerly owned by EFO GP, the Debtor's former general partner, that were excluded from prior productions ("Missing Entities" defined *infra*) and (ii) the QuickBooks file of sixteen (16) Debtor affiliates that were used to keep assets from creditors ("Maneuvering Entities" defined *infra*).

2. **Entities Formerly Owned by EFO GP**. QuickBooks files are the primary means of the Debtor's insiders recording their transactions and ownership. The audit trail could show backdating if, as the Debtor's CFO testified, backdating was the norm at Esping HQ. When EFO GP's tax returns showed that EFO GP (the Debtor's general partner and codebtor) owned an interest in 14 entities, the Plaintiffs sought the QuickBooks files. In 2019, Judgment Creditors served Requests for Production of the QuickBooks files from 2005 forward. EFO GP resisted. EFO GP now claims it transferred ownership interests after being sued by Bailey in 2006.[3] In Florida, the state court ruled on a show cause motion and required information back to 2012 "for now." Since then, Plaintiffs learned of claims of assets transferred from entities only months after Bailey sued. Plaintiffs should obtain the 14 entities' QuickBooks files back to 2006 because the

---

[1] Scott M. Seidel, the chapter 7 Trustee ("Trustee") for the estate ("Estate") of EFO Holdings, L.P. ("Debtor"), the debtor in the above-styled chapter 7 bankruptcy case ("Bankruptcy Case") and Joe Samuel Bailey, Laserscopic Spinal Centers of America, Inc., Laserscopic Spine Centers of America, Inc., and Laserscopic Medical Clinic, LLC (collectively, "Judgment Creditors" and together with the Trustee, "Plaintiffs").

[2] Capitalized terms used but not defined herein have the meanings ascribed to them in the Plaintiffs' Second Amended Complaint [Adv. Dkt. 312] ("Second Amended Complaint" or "SAC").

[3] *See EFO GP Interests, Inc.'s Amended Answer to Plaintiffs' [sic] Second Amended Complaint* [Adv. Dkt. 384 ¶ 284].

files are relevant to ownership and transfers in dispute, and Defendants bear no significant burden of time or expense to export and copy a file.

3. **Maneuvering Entities**. As described in Plaintiffs' live complaint (and herein) another 16 EFO entities were used to maneuver ownership and assets to hinder creditors of the EFO Judgment Debtors. EFO used these entities for insider "loans," transactions with affiliates, and (in one case) even received a seven-figure payment from an EFO Judgment Debtor in December 2018, three days after the *Bailey II* opinion was issued finding that the Judgement Debtors were required to pay the Judgment Creditors nearly $300 million before prejudgment interest. The Final Judgment is now well in excess of $400 million. Important here, the entities operating at EFO did not sign separate promissory notes for these loans, but information was recorded on QuickBooks. Ownership, likewise, was recorded on QuickBooks. QuickBooks files with those book entries are directly relevant to the alleged loans (or lack of a loan, or a backdated loan, or "repayment" on the loan), and thus necessary evidence (and certainly reasonably likely to lead to the discovery of admissible evidence given Plaintiffs' allegations).

4. Defendants have refused to produce these QuickBooks files and assert objections that they are (i) irrelevant and (ii) burdensome to produce. But exporting a QuickBooks file is not a real burden.[4] As discussed below, Plaintiffs request an order compelling production because the information sought in the QuickBooks file is evidence or likely to lead to relevant evidence.

---

[4] QuickBooks software contains a feature that allows users to "create a portable version of your company file that's <u>easy</u> to move." *See* https://quickbooks.intuit.com/learn-support/en-us/help-article/back-data/create-open-portable-company-files-quickbooks/L2NDPWLvm_US_en_US (emphasis added).

"In light of the foregoing, the court is persuaded that the requested data is discoverable because the information may bear on the merits of the plaintiffs' claims and the defendants have not persuasively demonstrated that burden or expense of production outweighs the benefit." *Pollack v. Seamus Crowley Constr., Inc.*, No. 13-CV-12157-MLW, 2019 U.S. Dist. LEXIS 141247, at *7-8 (D. Mass. Apr. 15, 2019) (citing *Tetra Tech, Inc. v. Jerry Herling Constr., Inc.*, Civ. No. 08-CV-210-D, 2011 WL 13272830 (D. Wyo. Apr. 25, 2011) (finding QuickBooks files especially relevant "where fraud . . . has been alleged" and granting motion to compel production of QuickBooks database)).

## II. HISTORY OF THE CASE SHOWS CONCEALMENT IS ROUTINE

5. Bailey sued Mr. Esping and others in Arkansas for in excess of $200 million in 2005 when the EFO Judgment Debtors[5] stole his laser spine surgery business. That suit was re-filed in September of 2006 in Florida and resulted in the nearly $400 million judgment (now well in excess of that amount). Months after that suit was filed, the Debtor and its insiders started making transactions (and continued to do so) that are subject of this Adversary Proceeding.

6. From 2006 to 2018, Defendants conducted transactions designed to hinder creditors and ensure that the Judgment Creditors would not collect on their Final Judgment (the "Maneuvers"):

   a. Six months after Bailey's 2006 suit in Florida, EFO GP purportedly authorized EFO Holdings, L.P. to convey all of its assets to an affiliate, including its limited partnership interest in EFO LSI.

   b. The trial court issued its Order on Non-Jury Trial in the Bailey Litigation on October 9, 2012 establishing liability of the EFO Judgment Debtors. Two months later, EFO Holdings, L.P. filed bankruptcy, but did not list the purported transfer of assets and the subsidiary ownership in the past 6 years, as the Statement of Financial Affairs requires.[6]

   c. Oral argument in *Bailey I* was heard May 27, 2015, and EFO Judgment Debtor representatives in attendance heard indications the liability could be over $200 million.[7] Six weeks later, EFO LSI "accelerated future

---

[5] EFO Holdings, L.P.; EFO GP Interests, Inc. (f/k/a EFO GenPar, Inc.); and EFO Laser Spine Institute, Ltd. ("EFO LSI") (collectively, "EFO Judgment Debtors"). The other defendants in the Bailey Litigation were Laser Spine Institute, LLC ("LSI"); Laser Spine Medical Clinic, LLC; Laser Spine Physical Therapy, LLC; and Laser Spine Surgical Center, LLC, (collectively, "LSI Judgment Debtors"); James S. St. Louis, D.O.; and Michael W. Perry, M.D.

[6] *See* SAC ¶¶ 3, 91 n.54.

[7] In *Bailey I*, Defendants argued that the trial court found damages should be limited to a one month head start in getting LSI up and running.

> It's actually more than a one month head start, wouldn't it be, because Dr. St. Louis's – by all the findings on the record – his surgical procedure is unique. So, the replacement brought in is performing surgeries at a lesser standard than his innovate new standard. So, is that really a one month startup?

Judge Darryl C. Casanueva at 12:18:13 p.m. May 27, 2015., https://www.youtube.com/watch?v=11d2o6PmBVk.

        distributions"[8] to take some "chips off the table,"[9] i.e., drain the last bit of value out of the business knowing that an adverse ruling was imminent.

    d. The *Bailey II* opinion was issued on December 28, 2018. Three days later, EFO GP was stripped of a $1.4 million receivable from Mr. Esping, via the repayment of an alleged "loan" under the Master Loan Agreement.[10]

    7. Thanks to the Maneuvers, which were never truly disclosed to the Plaintiffs or the Court,[11] the EFO Judgment Debtors were stripped clean. EFO Judgment Debtors have paid the Judgment Creditors only a few thousand dollars – even though the Debtor's net income from 2004 to 2007 was $11.8 million and even though EFO LSI's net income from 2004 to 2015 was $146.4 million. Defendants always believed that their profits from stealing the laser spine business would far exceed the damages awarded to the Judgment Creditors.[12]

    8. Throughout this adversary proceeding and the cases consolidated within it, the Defendants withheld financial information about transfers and ownership. One or more of the Plaintiffs frequently filed motions to compel. When faced with motions to compel, some

---

[8] SAC ¶¶ 26, 44, 51, 246, 286, 317.

[9] March 23, 2023 Deposition of Dotty Bollinger 137:12-16 ("Q What was the rationale for considering that option at the time that the business needed working capital? A Some of the owners wanted to take chips off the table.").

[10] SAC ¶¶ 80, 145, 182, 227, 240, 246, 280.

[11] The Schedules were never amended, and these Maneuvers were concealed until 2019-2020. For Eminence (who allegedly received all of the Debtor's assets), EFO held a meeting in January 2015 with the Trustee, but the Trustee was not told the truth. He was told a transfer of assets was entirely completed in 2007, never told the Debtor's transfer of marketable securities had not happened until 2008, never told the transfer of EFO Financial had not fully happened, not told that tax returns contained incorrect information, that the transfer had not been properly authorized, or there were two different versions of the alleged transfer. Mr. Bailey's Bankruptcy Counsel from 2015 learned in April 2023 that he possessed a document relating to the 2007, which he may have received Defendants' counsel in 2015, or anyone else at any time. Even so, the Debtor never corrected the Schedules and Statements of Financial Affairs and other key facts remained undisclosed.

[12] This prerogative resulted in an award of disgorgement.

> This case is a classic example of what this comment from the Restatement [(Third) of Restitution and Unjust Enrichment § 3 cmt. c, e] describes. As we detailed in *Bailey I*, when the appellants did not accept the appellees' offer to invest in Spinal, the appellees told them "you're going to accept this offer or we're going to take your doctors and we're going to take your company. And we're going to go up the street and we're going to do it ourselves." When threatened with litigation, the appellees said they were not concerned because the business would make ten times whatever damages they might have to pay in a lawsuit.

*Bailey v. St. Louis*, 268 So. 3d 197, 201-02 (Fla. 2d DCA 2018) (citations omitted).

information was produced, but the entire QuickBooks files of the Maneuvering Entities and entities owned by EFO GP have never been produced. These materials are directly relevant, however.

9. This Motion seeks an order compelling the Defendants to produce (i) complete QuickBooks files for the Missing Entities listed in Exhibit A, in which EFO GP owns or owned an interest and (ii) complete QuickBooks files for the Maneuvering Entities listed in Exhibit B, which contain information relevant to the Plaintiffs' claims. Plaintiffs need this information to investigate actions of the EFO Judgment Debtors, where money went, and how information was recorded or backdated in the QuickBooks system. Notably, if, as Defendants allege, they engaged in no wrongdoing, there would be no reason to withhold the production of this information.

### III.  BACKGROUND

#### A.  State Court Order to Produce QuickBooks Files

10. The parties stipulated that prior rulings in the State Court Proceedings remain law of the case [Adv. Dkt. 189 at 9]. However, the Court is permitted to modify its interlocutory orders.[13]

11. On May 12, 2021, after a hearing in the Florida Proceedings Supplementary, Judge Farfante ordered EFO GP to produce "the entire Quickbooks file (.QBW) relating to the EFO GP and/or the Entities."[14] "Entities" was defined in a prior order of Judge Stevens as "[f]or the period beginning in 2012 through the present date, Defendant EFO GP shall identify every entity in which it has or had an interest, no matter what interest EFO GP had or currently has (collectively, the

---

[13] *See* Tr. of June 21, 2022 Hr'g on Motions to Dismiss, 157:9-160:19.

[14] Order Denying, in Part, and Granting, in Part, Second Renewed Motion for Order to Show Cause against Defendant EFO GP Interests, Inc. f/k/a EFO Genpar, Inc. and for Order of Contempt, *Bailey, et al. v. St. Louis, et al.*, No. 06-CA-008498 (Fla. Cir. Ct. May 12, 2021) ("May 2021 Order") attached as Exhibit C.

'Entities').'[15]  However, discovery has shown that production of information prior to 2012 is appropriate based upon the Maneuvers.

12. The EFO Judgment Debtors produced QuickBooks files for a total of thirty-three (33) entities, including their own.  EFO GP's 2012 tax return indicates that it owned an interest in two (2) entities[16] for which no QuickBooks files were produced.  EFO GP's pre-2012 tax returns indicate that it owned an interest in twelve (12) additional entities[17] for which no QuickBooks files were produced.  On April 21, 2023, Plaintiffs requested via letter that Defendants produce the QuickBooks files for the fourteen (14) missing entities listed in Exhibit A ("Missing Entities").  On May 15, 2023, Defendants refused.

### B. Request for Production of Additional QuickBooks Files

13. Via either direct action or ownership and control, each of the Maneuvering Entities on Exhibit B participated in one or more of the Maneuvers.

14. On March 30, 2023, Plaintiffs requested the QuickBooks files for each of the Maneuvering Entities via a request for production under FED. R. CIV. P. 34 and FED. R. BANKR. P. 7034.

15. On May 2, 2023, Defendants objected to the request because the request (i) "is overbroad and unduly burdensome;" (ii) "seeks documents that are not relevant nor reasonably calculated to lead to the discovery admissible evidence;"[18] and (iii) "impermissibly seeks post-judgment discovery."

---

[15] Order on Plaintiffs' Renewed Motion for Order to Show Cause Against Defendant EFO GP Interests, Inc. f/k/a EFO Genpar, Inc. and for Order of Contempt, *Bailey, et al. v. St. Louis, et al.,* No. 06-CA-008498 (Fla. Cir. Ct. July 28, 2020) ("July 2020 Order") attached as Exhibit D.
[16] EFO U-Park, Inc. and Spud, Inc.
[17] The entities listed in Exhibit A, except for EFO U-Park, Inc. and Spud, Inc.
[18] Previously produced QuickBooks files contained evidence relevant to the Plaintiffs' veil piercing claims against EFO LSI and WPE Kids.  *See* SAC at 59 n.66., 88 ¶ 212.

## IV.    LEGAL STANDARD

16.    FED. R. CIV. P. 37 permits a party to move to compel production of documents when another party has failed to produce documents requested under FED. R. CIV. P. 34. *See* FED. R. CIV. P. 37(a)(1), (a)(3)(B)(iv). Under the Federal Rules, the scope of permissible discovery is very broad. "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case . . . ." FED. R. CIV. P. 26(b)(1). Courts have repeatedly affirmed that rules of discovery are to be afforded a "broad and liberal treatment to effect their purpose of adequately informing the litigants in civil trials." *M3Girl Designs, LLC v. Blue Brownies, LLC*, No. 3:09-cv-2390-F, 2011 U.S. Dist. LEXIS 159909, at *6 (N.D. Tex. Aug. 31, 2011) (citing *Herbert v. Lando*, 441 U.S. 153, 177 (1979)).

17.    FED. R. CIV. P. 26(b)(1) confirms that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable" and that "the party seeking to compel discovery has the initial burden of establishing that its request satisfies the relevancy requirements of Rule 26(b). *Id*. If the movant demonstrates relevancy, the burden shifts to the party resisting discovery to demonstrate why the request is unduly burdensome or otherwise not discoverable. The 2015 amendments did not shift the burden of proving proportionality to the party seeking discovery. *McKinney/Pearl Rest., L.P. v. Metro. Life Ins. Co.*, 2016 U.S. Dist. LEXIS 1999 (N.D. Tex. Jan. 8, 2016) (to successfully resist a motion to compel, the party resisting discovery must show that the requested discovery does not fall within Rule 26(b)(1)'s scope or that a discovery request would impose an undue burden or expense or is otherwise objectionable).

18.    The proportionality determination requires the Court to consider "the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and

whether the burden or expense of the proposed discovery outweighs its likely benefit." FED. R. CIV. P. 26(b)(1).

## V. ARGUMENT

### A. EFO GP Must Produce QuickBooks Files for the Missing Entities Because It Is Relevant Information and Not Burdensome

19. FLA. R. CIV. P. 1.560 requires judgment debtors to file FLA. R. CIV. P. FORM 1.977 within forty-five (45) days of entry of a judgment. Form 1.977 is a sworn financial statement, which requires disclosure of any "transfer of any personal or real property to or from the entity within the 12 months immediately preceding the date this lawsuit was filed."

20. In post-judgment discovery, Judgment Creditors requested financial information going back to January 1, 2005.[19] EFO Judgment Debtors refused to produce information prior to 2015.

> MR. CAPUANO: Your Honor, we filed an objection based upon the requests for production to the scope of discovery, and we had a meet-and-confer on the issue, and no motion to compel was ever filed.
>
> THE COURT: So you went out on kind of a limb there by deciding that the -- that the limitation that you wanted to impose was going to be four years, right?

Tr. of July 7, 2020 Hr'g on Plaintiffs' Renewed Motion for Order to Show Cause Against Defendant EFO GP Interests, Inc. f/k/a EFO GenPar, Inc. and Order of Contempt at 31:13-20, *Bailey, et al. v. St. Louis, et al.,* No. 06-CA-008498 (Fla. Cir. Ct. July 7, 2020) attached as Exhibit F. As a starting point, the Florida Court ordered production of information going back to 2012.

> "What we're going to do is require the supplemental production that identifies every entity in which the judgment debtor has or had an interest. For now we will

---

[19] Plaintiffs' First Post-Judgment Request for Production in Aid of Execution to Defendant EFO GenPar, Inc., *Bailey, et al. v. St. Louis, et al.,* No. 06-CA-008498 (Fla. Cir. Ct. Sept. 24, 2019) attached as Exhibit E.

go back six years, not just four, not just five, whatever – was it four? It was four when they did it because it was 2019. So go back to 2012."

*Id.* at 39:23-40:3. Thus, the 2012 limitation was applied to the definition of Entities in the July 2020 Order, and the defined term was used again in the May 2021 Order.

21. Contemporaneous with the May 2021 Order, in discovery taking place in the Texas Collections Case, Plaintiffs received a copy of the 2007/2009 Contribution, in which EFO GP purportedly authorized the Debtor to give away all of its assets effective April 3, 2007. The 2007/2009 Contribution demonstrates that Defendants' conspiracy to place assets out of the reach of creditors began no later than the spring of 2007, about six months after the Bailey Litigation commenced. Additionally, there is evidence that start-up funds sent directly to LSI were, several months after the fact, treated as capital contributions to EFO LSI, concealing the actual funding transactions. Therefore, (i) the discovery period for the EFO Judgment Debtors should extend back at least to the purported formation of EFO LSI;[20] (ii) assets owned by EFO GP during that period should be discoverable; and (iii) EFO GP should be required to produce the Missing Entities' QuickBooks files.

### B. Defendants Must Produce QuickBooks Files for the Maneuvering Entities Because They Are Relevant to the Plaintiffs' Claims and Proportional to the Needs of the Case

22. In addition to ordering the production of the QuickBooks files of the Entities, the May 2021 Order also required production of documents relating to "'assets that were transferred away from [EFO GP] or *one layer down* from EFO GP'" (emphasis added), but information one layer up from the EFO Judgment Debtors and information from certain affiliates of the EFO Judgment Debtors is relevant to Plaintiffs' claims for the reasons further outlined below.

---

[20] Limited Partnership Agreement of EFO Laser Spine Institute, Ltd. dated "as of this ___ day of December, 2004" attached as <u>Exhibit G</u> produced in native pdf format with Bates filename EFO-DVP-013715.

1. WPE Kids, WPE GP, and WPE Holdings

23. Plaintiffs have alleged that Mr. Esping (and others), rather than EFO LSI, directly funded the startup of LSI and that the funds provided between November 2004 and June 2005 were commingled and later improperly treated as capital contributions to EFO LSI even though EFO LSI accounts were not opened until June 2005.[21] Mr. Esping denies these allegations in their entirety.[22]

24. Mr. Grammen testified that "EFO Holdings" provided the early funding,[23] but it is not clear which interpretation of the term "EFO Holdings" Mr. Grammen intended. Other documents indicate that Mr. Esping, directly or indirectly, was the primary source of capital and that funds were wired to LSI's Branch Banking & Trust Company ("BB&T") account in St. Petersburg, Florida, not any of EFO LSI's accounts with Texas Capital Bank, Wells Fargo, BBVA, and Bank of America.

25. Plaintiffs requested bank statements from the successor of BB&T to identify the precise source(s) of early funding, but the relevant dates were outside the bank's retention period. Therefore, Plaintiffs specifically requested Defendants to produce "all documents concerning or evidencing capital contributions to EFO Laser Spine Institute, Ltd. between November 1, 2004 and June 30, 2005."[24] No responsive documents have been produced.

---

[21] *See* SAC ¶¶ 154, 172, 211, 358.

[22] *See William P. Esping's Amended Answer to Plantiffs' [sic] Second Amended Complaint* [Adv. Dkt. 387 ¶¶ 154, 172, 211, 358].

[23] *See* May 4, 2010 Deposition of Robert Grammen 70:17-71:5:

> Q. As early as November -- end of November of 2004, EFO Holdings was paying Dr. St. Louis, Dr. Perry, and others, money to have them available and to assist toward the goal of opening a minimally invasive spine surgery center?
>
> . . .
>
> A. Best of my knowledge, I think you're correct. But again, I'd have to go back and look. But you could be right.

[24] Request for Production No. 3 from Fourth Set of Bankruptcy Requests for Production to Defendants served March 30, 2023.

26. To establish that EFO LSI's capital structure is improperly mispresented in its books and that Mr. Esping, through his investment entities, transferred funds directly to LSI's BB&T account, the QuickBooks files of WPE Kids, WPE GP, and WPE Holdings should be produced.

27. Furthermore, the fact that Florida's Second District Court of Appeal instructed an award of disgorgement should not be forgotten. "Accordingly, we again reverse the awards for breach of fiduciary duty, conspiracy, and tortious interference and remand for the court to enter an award of disgorgement." *Bailey v. St. Louis*, 268 So. 3d 197, 202-03 (Fla. 2d DCA 2018). An award of disgorgement should be sufficient cause for production of the QuickBooks file for every entity that received distributions from EFO LSI, especially WPE Kids. Of the $173.4 million distributed by EFO LSI to its partners between 2006 and 2015, WPE Kids received the largest amount, by far, $57.7 million.

  2. <u>EFO Management, Entity Manager, PMC Irrevocable Trust, CME Trust, MHE Trust, and WPE Jr. Trust</u>

28. The 2011/2012 Redemption imposed a "blocking entity" in the Debtor's ownership structure, whereby EFO Management purportedly became the 100% ultimate beneficial owner of the Debtor.[25] The transaction was rendered effective January 1, 2011 but entered into the Debtor's QuickBooks and amended 2011 tax return on September 25, 2012, just a few months before the Petition Date, but it was undisclosed and effectively "undone" in the Debtor's Statement of Financial affairs.[26] This transaction was performed in order to grant releases to insiders and shift

---

[25] *See* SAC ¶ 124 n.67.
[26] *See* SAC ¶ 114.

liability from themselves to an LLC owned by trusts[27] – two months after the trial court entered its Order on Non-Jury Trial.

29. In order for Plaintiffs to establish that Defendants attempted to shift ultimate liability for claims to a potentially undercapitalized entity owned by family trusts, the QuickBooks files of EFO Management, its general partner Entity Manager, and its owners, PMC Irrevocable Trust, CME Trust, MHE Trust, and WPE Jr. Trust should be produced.

30. The Debtor's "Legal File" indicates that the 2011/2012 Redemption was part of a broader reorganization of the Debtor's structure, and that the Debtor was to obtain ownership of Entity Manager. However, it is not clear from the Debtor's QuickBooks file or other production whether that transaction was effectuated. Entity Manager's QuickBooks file should also be produced to confirm no such transaction was made and then improperly reversed during or leading up to the Bankruptcy Case.

31. The QuickBooks files of PMC Irrevocable Trust, CME Trust, MHE Trust, and WPE Jr. Trust should also be produced to ensure that assets were not moved out to deliberately undercapitalize the Debtor's 99% limited partnership interest owner and the Debtor's ultimate beneficial owner of the Debtor's 1% general partnership interest owner.

### 3. EFO HMI and MDT2

32. Following a confusing sequence of entity name changes, EFO HMI acquired EFO GP's 1% general partnership interest in the Debtor – six months before the Petition Date.[28] This transaction shifted the Debtor's liability structure from Mr. Esping, his mother, and his sisters to

---

[27] *See* SAC ¶ 148.c.
[28] *See* SAC § V.B.4.

trusts in the name of Mr. Esping's children.[29] Because Defendants have acted in the past to attempt to place the Debtor's assets out of the reach of creditors, the QuickBooks files of EFO HMI and MDT2 should be produced.

### 4. EFO Financial

33. EFO Financial was (or is) *one layer down* from the Debtor, and the QuickBooks files of EFO Financial should be produced for the same reasons that Judge Farfante ordered the production of the QuickBooks files of "Entities" in which EFO GP has or had an interest.

34. Additionally, the Trustee has alleged that the transfer of the Debtor's 80% ownership interest in EFO Financial was not effective.[30] Therefore, the Estate owned an interest in the 2015 bonuses and previous bonuses, and the Trustee should be permitted to examine EFO Financial's QuickBooks file.

### 5. Eminence and Eminence GP

35. The Debtor, according to the 2007/2009 Contribution, momentarily owned the 99.9% limited partnership interest in Eminence. Thus, Eminence was *one layer down* from the Debtor, and the QuickBooks files of Eminence should be produced for the same reasons that Judge Farfante ordered the production of the QuickBooks files of "Entities" in which EFO GP has or had an interest.

---

[29] EFO GP's sole shareholder is MDT2, whose beneficiaries are Kathryn Esping, Jennifer Esping Kirtland, Julie Blanton, and William Esping. EFO HMI's sole shareholder was originally Mr. Esping and currently EFO Management, which is owned by PMC Irrevocable Trust, CME Trust, MHE Trust, and WPE Jr. Trust, whose beneficiaries are unknown, but presumably, at least as to the latter three, are Mr. Esping's children.

[30] *See* SAC ¶¶ 94-95.

36. Additionally, the Trustee alleges that the 2007/2009 Contribution was a breach of duty,[31] a fraudulent transfer,[32] a sham,[33] and the predicate act required to pierce the corporate veil.[34] The Trustee should be permitted to inspect the QuickBooks files of Eminence and Eminence GP to confirm that the business fits the pattern described in *Castleberry.*

> The variety of shams is infinite, but many fit this case's pattern: a closely held corporation owes unwanted obligations; it siphons off corporate revenues, sells off much of the corporate assets, or does other acts to hinder the on-going business and its ability to pay off its debts; a new business then starts up that is basically a continuation of the old business with many of the same shareholders, officers, and directors.

*Castleberry v. Branscum*, 721 S.W.2d 270, 275 (Tex. 1986).

      6.    <u>Green Series and JBJ</u>

37. Judgment Creditors allege that Green Series and JBJ were used to relieve EFO GP of its last remaining assets after the Florida's Second District Court of Appeals issued its opinion in *Bailey II* and before entry of the Final Judgment via (i) assignments of general partnership interests to Green Series[35] and (ii) the payoff of a stale (at best) or illegitimate (at worst) loan from JBJ.[36]

---

[31] *See* SAC ¶ 222.d.

[32] *See* SAC § VI.C.1.

[33] *See* SAC § VI.E.2.

[34] *See* SAC ¶¶ 335, 350.

[35] *See* SAC ¶¶ 145, 176, 227.h, 284. "First, in the spring or summer, it transferred away general partnership interests in ten entities to Green Series. Second, after collecting on a receivable from Esping for expenses paid on his behalf in the McCommas Litigation, EFO GP paid $1.4 million to JBJ to satisfy a bogus loan three days after the *Bailey II* opinion was issued (*infra* ¶ 181) in December 2018." ¶ 145; "It was formed March 28, 2018, three days before the date that EFO GP purported to sell and assign its general partner interests in ten entities. At least two of these ten entities own or owned significant assets. The transactions with Green Series were part of the schemes and breaches of duty described above." ¶ 176; "Esping, Grammen, Krupala, Wilson, John Hoffman, and J. Hoffman & Co. breached their duties of care and loyalty by causing EFO GP to purportedly assign its interests in at least ten entities to Green Series. As a result of this breach, EFO GP was purportedly stripped of its assets and unable to satisfy liabilities, injuring its creditors." ¶ 227.h.

[36] *See* SAC ¶¶ 79-81, 182.

PLAINTIFFS' MOTION TO COMPEL PRODUCTION OF QUICKBOOKS FILES—Page 16

4889-8857-9170.v9

38. EFO GP and Green Series admit that EFO GP "transferred away general partnership interests in ten entities to Green Series" but added that such transfers were for "fair market value"[37] or "reasonably equivalent value."[38] In order to verify those determinations, the Judgment Creditors should be permitted to examine the QuickBooks files of Green Series, up to the current date, to, for example, evaluate distributions received on account of the transferred partnership interests in 2018 and 2019.

39. EFO GP and JBJ deny the entirety of the allegations regarding the payoff of the JBJ loan three (3) days after the opinion in *Bailey II* was issued. The documents produced thus far appear to speak for themselves:

   a. An email indicates that the JBJ loan represented the initial capitalization of EFO GP.

   b. Texas Capital Bank account statements indicate that EFO GP wrote check #2144 to JBJ on December 31, 2018 in the amount of $1,369,151.23 representing $847,375.90 in accrued interest and $521,775.33 in principal.

   c. Texas Capital Bank account statements indicate that William Esping wrote checks ##3189-93 to EFO GP on December 31, 2018 in the total amount of $1,369,151.23 on behalf of ES Energy Solutions, LP, McCommas Landfill Partners, LP, McCommas LFG Processing Partners, LP, McCommas LFG Processing Management, LLC, and McCommas Landfill Management, LLC.

   d. LA Pro loan history indicates the loan was made in 1997 but was posted in 2002 and that the last loan payment prior to December 31, 2018 was December 31, 2008.

40. Judgment Creditors cannot identify a basis for EFO GP and JBJ to deny the allegations in the existing documents. Therefore, more information is needed, and JBJ's QuickBooks filed should be produced.

---

[37] *See EFO GP Interests, Inc.'s Amended Answer to Plantiffs' [sic] Second Amended Complaint* [Adv. Dkt. 384 ¶ 145].

[38] *See Amended Answer of the Non-Partner Defendants' [sic] to Plaintiffs' Second Amended Complaint* [Adv. Dkt. 379 ¶ 145].

### C. The Estate Has at Least Some Interest in the QuickBooks License Purchased by EFO GP

41. EFO GP's credit card statements indicate that it purchased the QuickBooks Enterprise License from Intuit, which is used by each of the entities operating at Esping HQ. Plaintiffs have not identified any QuickBooks transactions where the costs paid by EFO GP to Intuit for the license are allocated back to any of the other EFO entities. Therefore, each of the QuickBooks files under that license is the property of EFO GP and within the broad scope of post-judgment discovery.

> The scope of post-judgment discovery is "very broad." *F.D.I.C. v. LeGrand*, 43 F.3d 163, 172 (5th Cir.1995); *T–M Vacuum Prods., Inc. v. Taisc, Inc.*, No. H–07–4108, 2008 WL 5082413, at *1 (S.D. Tex. Nov.25, 2008) (quoting 13 JAMES WM. MOORE ET AL., MOORE'S FEDERAL PRACTICE–CIVIL § 69.04 (2008)) ("The purpose of discovery under Rule 69(a)(2) is to allow the judgment creditor to identify assets from which the judgment may be satisfied and consequently, the judgment creditor should be permitted to conduct a broad inquiry to uncover any hidden or concealed assets of the judgment debtor."). Further, Rule 69(a) applies the normal procedure of conducting discovery to post-judgment discovery requests. Fed. R. Civ. P. 69(a)(2); *Nat'l Satellite Sports v. Elizondo*, No. 3:00–CV–2297–L, 2003 WL 21507362, at *1 (N.D. Tex. Apr. 25, 2003). If a motion to compel post-judgment discovery is granted, the Court must require the party whose conduct necessitated the motion to pay the movant's reasonable expenses incurred in making the motion, including attorney's fees. FED. R. CIV. P. 37(a)(5)(A).

*J & J Sports Prods., Inc. v. Mandell Fam. Ventures, LLC*, No. 3:10-CV-2489-BF, 2014 WL 1294128, at *1 (N.D. Tex. Mar. 31, 2014).

42. Additionally, the Estate has at least some interest in the QuickBooks Enterprise License because the Debtor used the license to keep its books.[39] The Trustee could request turnover of all QuickBooks files created under EFO GP's license pursuant to 11 U.S.C. § 542

---

[39] *See* 5 RICHARD LEVIN & HENRY SOMMER, COLLIER ON BANKRUPTCY ¶ 541.01 (16th 2023):
> Congress's intent to define property of the estate in the broadest possible sense is evident from the language of the statute which, in section 541(a)(1), initially defines the scope of estate property to be all legal or equitable interests of the debtor in property as of the commencement of the case, wherever located and by whomever held. It would be hard to imagine language that would be more encompassing.

because the Estate's property is commingled with the property of the other license users in the single accounting platform. However, only production of the QuickBooks files relevant to the Plaintiffs' claims is requested at this time.

### D.    Defendants' Offer to Produce Limited Documents Is Insufficient

43.    In conferring on this Motion, Defendants offered to produce documents reflecting changes in ownership interests of the Maneuvering Entities to satisfy a portion of the specific request for production. Plaintiffs cannot rely upon a limited set of documents and require the entire QuickBooks files because of the inconsistencies between the Defendants' books and records, testimony to the Court, and representations to the IRS. *See* SAC ¶¶ 103, 105, 107, 110, 112, 119, 137, 138, 155.g.

## VI.    RELIEF REQUESTED

44.    For the foregoing reasons, Plaintiffs respectfully request that Defendants be ordered to produce the QuickBooks files of the Missing Entities and the Maneuvering Entities and such other relief, at law or in equity, to which they may show themselves justly entitled.

Dated: May 16, 2023

Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: */s/ Hugh M. Ray, III*
Hugh M. Ray, III
State Bar No. 24004246
Lawrence James Dickinson
State Bar No. 24105805
Two Houston Center
909 Fannin, Suite 2000
Houston, TX 77010-1028
Tel: (713) 276-7600
Fax: (713) 276-7673
hugh.ray@pillsburylaw.com
james.dickinson@pillsburylaw.com
baileycollections@pillsburylaw.com

*Counsel for the Plaintiffs*

### CERTIFICATE OF CONFERENCE

Counsel for the Plaintiffs and Defendants conferred on May 11, 2023. On May 15, 2023, counsel for Defendants confirmed they stand on their objections to the requests for the QuickBooks files. The Motion is opposed and necessary.

*/s/ Hugh M. Ray, III*
Hugh M. Ray, III

### CERTIFICATE OF SERVICE

This is to certify that on May 16, 2023, a true and correct copy of the foregoing was served via the CM/ECF system on all counsel of record (who are deemed to have consented to electronic service).

*/s/ Hugh M. Ray, III*
Hugh M. Ray, III