Christopher J. Schwegmann
Texas Bar No. 24051315
Email: cschwegmann@lynnllp.com
LYNN PINKER HURST & SCHWEGMANN, LLP
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

*Attorney for Defendants*

**IN THE UNITED STATES BANKRUPTCY OURT
FOR THE NORTHERN DISTRICT OF TEXAS
DALLAS DIVISION**

| | | |
|---|---|---|
| In re:<br><br>EFO HOLDINGS, LP,<br><br>    *Debtor*. | §<br>§<br>§<br>§<br>§<br>§ | Case No. 12-37936-hdh-7 |
| Scott M. Seidel, the chapter 7 Trustee, *et al*.,<br><br>    Plaintiffs<br><br>vs.<br><br>William Esping, *et al*.,<br><br>    Defendants. | §<br>§<br>§<br>§<br>§<br>§<br>§<br>§<br>§ | Adversary No. 21-03043-hdh |

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
TO COMPEL PRODUCTION OF QUICKBOOKS FILES**

Defendants[1] file this Response to Plaintiffs' Motion to Compel Production of QuickBooks Files (the "Response") and in support thereof, would respectfully show as follows:

---

[1] Except for John Hoffman and J. Hoffman & Co.

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
TO COMPEL PRODUCTION OF QUICKBOOKS FILES**           **PAGE 1**

## INTRODUCTION

1. Plaintiffs seek to re-open discovery matters that were decided more than two years ago in the related Florida Proceedings Supplementary.[2] The parties have stipulated that all discovery orders in related proceedings apply to this Adversary Proceeding. *See* Dkt. No. 189. Plaintiffs acknowledge that Defendants have complied with these rulings by producing QuickBooks files going back to 2012 for thirty-three entities. Despite this, Plaintiffs ask to expand the production to include QuickBooks files going back to 2006—**nearly twenty years ago**, well beyond relevant statutes of limitations—and for an additional **thirty entities.**[3]

2. Plaintiffs' Motion fails to give cause why this already litigated issue should be re-opened to this expansive discovery. Plaintiffs state that the basis of their Motion is newly discovered information about asset transfers occurring in 2006. However, Plaintiffs had already requested QuickBooks files going back to 2005 in the Florida Proceedings Supplementary hearing based on alleged transfers—a request which the Court denied.

3. Additionally, Defendants have offered to produce other, less burdensome, documentation that shows that the same information the Plaintiffs request. Plaintiffs have refused this offer, even though the ownership information the Plaintiffs state is the basis of their Motion

---

[2] For ease of reference, unless otherwise noted, Defendants adopt Plaintiffs abbreviations.
[3] Plaintiffs divides the entities related to these QuickBooks files into two groups, which Plaintiffs call 'Missing' and 'Maneuvering.' Both of these appellations are misleading. The so-called 'missing' entities are: (1) Cross Matrix Corp.; (2) EBP Realty, Inc.; (3) Edgewater Beach Development, Inc.; (4) EFO Employees, Inc.; (5) EFO Overlook Management Co.; (6) EFO Realty, Inc.; (7) EFO/Robroy, Inc.; (8) EFO U-Park, Inc.; (9) Esping Capital, Inc.; (10) Esping Consulting Inc.; (11) Resort Properties of Naples, Inc.; (12) San Clemente B Management, L.P.; (13) Spud, Inc.; and (14) UIRT Investors, L.P. *See* Mot., Ex. A. The name is misleading because these entities were not 'missing'. Instead their QuickBooks files were not produced because Defendants had objected to producing these documents and Defendants were not required produce them under any court order. The so-called 'maneuvering' entities are: (1) Charlotte Marie Esping 2003 Trust; (2) EFO Financial Group, LLC; (3) EFO Holding Manager, Inc.; (4) EFO Management, LLC; (5) Eminence GenPar, Inc.; (6) Eminence Interests, L.P.; (7) Entity Manager, Inc.; (8) Esping Marital Deduction Trust No. 2; (9) Green Series, LLC; (10) JBJ Lending Company; (11) Madeline Holmes Esping 2003 Trust; (12) PMC Irrevocable Trust; (13) William P. Esping, Jr. 2003 Trust; (14) WPE GenPar, LLC; (15) WPE Holdings, Inc.; and (16) WPE Kids Partners, L.P. *See* Mot. Ex. B. While Plaintiffs attempt to connect these 'maneuvering' entities together, there is no clear thread connecting these entities and these are just sixteen additional entities that fall outside the scope of the Defendants' discovery obligations.

would not be reflected in QuickBooks files for any many of the entities. Plaintiffs fail to explain why QuickBooks files are uniquely relevant and necessary. Accordingly, Plaintiffs' request should be denied for at least following reasons:

4. **First**, Defendants have fully complied with its discovery obligations and Plaintiffs provide no new information that demonstrates why this Court should re-open already litigated discovery issues.

5. **Second**, Plaintiffs requested production is duplicative and overly burdensome. Defendants have offered to produce alternative documentation. Plaintiffs have refused this offer even though the QuickBooks files are not relevant to Plaintiffs' claims or defenses and much of the information sought by Plaintiffs is not even contained in the QuickBooks files.

## ARGUMENT AND AUTHORITIES

A. **The QuickBooks Issue Has Already Been Litigated.**

6. The parties in this action have stipulated that all discovery and any discovery orders in related proceedings would apply to this Adversary Proceeding. Dkt. No. 189 ¶ 4.

7. On September 24, 2019, in related proceedings, Plaintiffs served post-judgment discovery requests that included requests for various financial information from EFO GP Interests, Inc. f/k/a EFO Genpar ("EFO GP"). On July 28, 2020, the Circuit Court of the Thirteenth Judicial District for Hillsborough County, Florida entered an order ("July 2020 Order") requiring EFO GP to produce documents regarding "Entities" defined as every entity for which EFO GP has or had an interest for the period 2012 to the present. *See* Ex. A ¶¶ 2–3. On May 12, 2021, a clarifying order was issued which required the production of QuickBooks files related to the Entities as defined in the July 2020 Order. *See* Ex. B ("May 2021 Order") (collectively with the July 2020 Order, "Discovery Orders").

8. Plaintiffs concede that Defendants have complied with the Discovery Orders and produced QuickBooks files from 2012 to the present for the thirty-three entities[4] that fall within the definition in the July 2020 Order. Mot. ¶ 12. Plaintiffs' requests have already been fully litigated and fall within the Discovery Orders that Plaintiffs stipulated would remain the law of the case.

9. Plaintiffs wish to once again re-open settled discovery issues by asking for QuickBooks files for thirty additional entities going back nearly twenty years. Plaintiffs make two broad arguments to support their expansive requests: (1) Defendants have not fully complied with the Discovery Orders; and (2) Plaintiffs have learned information indicating that QuickBooks files from as far back as 2005 are relevant and *only* QuickBooks files can provide the necessary information. Both arguments fail.

**B.  Defendants Have Produced All QuickBooks Files Required by the Discovery Orders.**

10. First, Defendants have produced all responsive QuickBooks files required by the July 2020 Order. Plaintiffs concede the Defendants have produced thirty-three QuickBooks files. Mot. ¶ 12. None of the entities raised by Plaintiffs (either the so-called 'missing' or 'maneuvering' entities) fall within the requirements of the Discovery Orders.

*a.  'Missing' Entities–Not Missing and Fall Outside Discovery Orders*

11. None of the fourteen so-called 'missing' entities, were 'missing' from Defendants' production. Instead, Defendants have either produced all responsive documents that exist or so-called "missing" entities did not fall within the Discovery Orders. Plaintiffs were informed about

---

[4] Plaintiffs state that the QuickBooks files for EFO U-Park, Inc. and Spud, Inc. were not produced and are 'missing'. However, as explained in Section B *infra*, Defendants produced the QuickBooks file for EFO U-Park. Spud, Inc.'s QuickBooks file does not contain transactions after 2005 and therefore falls outside the Discovery Orders.

the status of allegedly missing entities on May 10, 2023, six days before Plaintiffs filed this Motion. *See* Ex. C, May 10, 2023 email.

12. Specifically, for twelve of the 'missing' entities, as indicated in the list below, EFO GP did not have any interest in the entity after 2012 and therefore they do not fall within the definition of the July 2020 Order:

1. **Cross Matrix Corp.** The final federal return year was 2009. This entity was formally dissolved in May 2018 and copies of that dissolution were produced in November 2020.

2. **EBP Realty, Inc.** The final federal return year was 2009. This entity was administratively dissolved in Florida in September 1999 and copies of that dissolution were produced in November 2020.

3. **Edgewater Beach Development, Inc.** The final federal return year was 2009. This entity was administratively dissolved in Florida in September 1999 and copies of that dissolution were produced in November 2020.

4. **EFO Employees, Inc.** This entity has been owned by Entity Manager, Inc. since January 1, 2008 and EFO GP has no ownership interest.

5. **EFO Overlook Management Co.** The final federal return year was 2009. This entity was formally dissolved in Texas in May 2018 and copies of that dissolution were produced in November 2020.

6. **EFO Realty, Inc.** The final year this entity was owned by EFO GP was 2006. The 2006 EFO Genpar, Inc. federal consolidated return has been produced.

7. **EFO/Robroy, Inc.** The final federal return year for this entity was 2009 (the consolidated return has been produced). This entity was formally dissolved in Texas in May 2018 and copies of that dissolution were produced in November 2020.

8. **Esping Capital, Inc.** The final federal return year for this entity was 2009 (the consolidated return has been produced). This entity was formally dissolved in Texas in May 2018 and copies of that dissolution were produced in November 2020.

9. **Esping Consulting, Inc.** The final federal return year of this entity was 2011 (the consolidated return has been produced). This entity was administratively dissolved in Delaware in March 2010.

10. **Resort Properties of Naples, Inc.** The final federal return year for this entity was 2010 (the consolidated return has been produced). This entity was administratively dissolved in Florida in September 2000 and copies of that dissolution were produced in November 2020.

11. **Spud, Inc**. There has been no QuickBooks activity after December 31, 2005 for this entity.

12. **UIRT Investors, L.P.** EFO GP does not have an interest in UIRT Investors, L.P.[5] UIRT Investors, L.P.'s general partner is EFO U-Park, Inc, which was owned by EFO GP. *See* Ex. D, Krupala Aff. ¶ 7; *see also* Ex. C.

13. The remaining two allegedly 'missing' entities had no responsive records or all records have been produced: (1) San Clemente B Management, L.P. has no records other than incoming K-1s, which have already been produced; (2) EFO U-Park, Inc. had a final federal return year of 2013 and Defendants have produced the QuickBooks file in September 2020; and (3) UIRT Investors is not owned by EFO GP.[6] *See* Ex. D, Krupala Aff. ¶¶ 2–7; *see also* Ex. C.

### b.  'Maneuvering' Entities–Fall Outside Discovery Orders

14. Likewise, the remaining sixteen so-called 'maneuvering' clearly fall outside of the Discovery Orders. None of these 'maneuvering' entities were ever owned by EFO GP. Nor could Plaintiffs argue otherwise—the QuickBooks files for EFO GP have been produced that show what EFO GP owned and when. None of the 'maneuvering' entities are included. Indeed, Plaintiffs acknowledge the 'maneuvering' entities are not 'one layer down' from EFO GP, but argue the Court should expand the Discovery Orders to include entities 'one layer up' from EFO GP and as well as certain affiliates of the EFO Judgment Debtors. *See* Motion ¶ 22.[7] The binding Discovery

---

[5] As Plaintiffs concede, the Discovery Orders apply to entities "one layer down" from EFO GP. Therefore, UIRT Investors, L.P. falls outside of the Discovery Orders.

[6] As noted, the records for EFO U-Park have been produced. because EFO U-Park is the general partner of UIRT Investors, L.P

[7] Plaintiffs make some entity specific arguments that may be construed as possibly contending that of the 'maneuvering' entities should have been produced under the Discovery Orders. *See* Mot. ¶¶ 33–36. As detailed in the entity specific arguments in Section C(c) *infra*, to the extent Plaintiffs are making such an argument they are not supported by the facts.

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
TO COMPEL PRODUCTION OF QUICKBOOKS FILES**                                                      PAGE 6

Orders limited the required production to entities that EFO GP had an interest in. Thus, Plaintiffs have no basis within the existing Discovery Orders to ask for the production of the QuickBooks files of any of the 'maneuvering' entities.

**C.  Plaintiffs Do Not Demonstrate the Discovery Orders Should be Modified.**

  *a.  Plaintiffs Have Known About Transfers.*

15.  Plaintiffs argue this Court should expand the Discovery Orders because Plaintiffs did not learn about certain asset transfers until after the Discovery Orders were issued in 2020 and 2021. *See, e.g.,* Mot. ¶ 2. However, Plaintiffs knew about asset transfers no later than 2015. Ex E., Dep. Tr. Mark Ralston, 15:13–18:9, 59:11–60:16; *see also* Mot. ¶ 7 n. 11 (acknowledging that the Mr. Bailey's Bankruptcy Counsel had received documentation of transfers in 2015). In fact, Plaintiffs raised similar allegations of transfers in the hearing for the May 2021 Order and requested information dating back to 2005 based on these alleged transfers. *See* Mot., Ex. F at 6–7. The Court, knowing these allegations, limited the Discovery Orders to entities in which EFO GP had an interest from 2012 to the present. Plaintiffs raise no information that should disturb the rulings in the Discovery Orders.

  *b.  QuickBooks are Duplicative and Overly Burdensome.*

16.  Additionally, Plaintiffs fail to meet their burden of showing that the QuickBooks files are "reasonably calculated to lead to the discovery of admissible evidence." *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 820 (5th Cir. 2004). Nor have Plaintiffs demonstrated that their requests for any additional thirty QuickBooks files are "proportional to the needs of the case." See Fed. R. Civ. P. 26(b)(1).

17.  Proportionality is determined based on a "calculation" of the factors listed in Rule 26(b): "the importance of the issues at stake in the action, the amount in controversy, the parties'

relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit." *See Mir v. L-3 Comms. Integrated Sys., L.P.*, 319 F.R.D. 220, 226 (N.D. Tex. 2016) (quoting Fed. R. Civ. P. 26(b)(1)). The district court must limit discovery if it is unreasonably duplicative, can be obtained through less burdensome means, or is beyond the scope permitted by Rule 26(b)(1). *Id.* (citing Fed. R. Civ. P. 26(b)(2)(C)).

18. Here, the production of the QuickBooks files would not be proportional to the needs of this case. Most notably production of the QuickBooks files would unreasonably duplicative, and the same information can be obtained through less burdensome means. Defendants have produced or have offered to produce other documentation that would show the same information as the QuickBooks files, but in a less intrusive and burdensome format: namely operating agreements and stock ledgers that contain the ownership and ownership transfer information sought by the Plaintiffs. Indeed, much in of the information sought by Plaintiffs would not be contained in QuickBooks at all.[8]

19. Plaintiffs acknowledge Defendants offer but have refused based on 'inconsistencies' in the Defendants' records. Motion ¶ 43. However, Plaintiffs point to a specific claim or defense that would be supported by showing these inconsistencies. *Rex Real Estate I, L.P. v. Rex Real Estate Exch., Inc.*, No. A-19-CV-696-RP, 2020 WL 710201, at *6 (W.D. Tex. Feb. 12, 2020) (limiting the production of QuickBooks those portions of the books relevant to claims).

20. Though Plaintiffs make broad allegations about inconsistencies, Plaintiffs fail to explain why the QuickBooks files regarding these particular entities would be uniquely relevant to any claim or defense raised in the Second Amended Complaint. QuickBooks reports are not

---

[8] For example, the transfer of ownership information for C-Corporations is not contained in the QuickBooks files and would only be reflected in the stock ledgers, which Defendants have already produced or will produce.

Document    Page 9 of 14

independent records and are based on underlying documents and information entered by Defendants. Therefore allegations that Defendants may have inconsistent records supports the production of underlying documentation and not QuickBooks files created by Defendants.

21. Plaintiffs' own authority supports this. Plaintiffs cite a Massachusetts case, *Pollack v. Seamus Crowley Constr., Inc.*, to argue that QuickBooks may be produced and that it is not burdensome. No. 13-CV-12157-MLW, 2019 WL 3553426 (D. Mass. Apr. 15, 2019). However, in *Pollack* the Court did not find that the burden of producing QuickBooks was light or that QuickBooks are appropriate when source documentation is available. Instead, in *Pollack*, the Court acknowledged that QuickBooks files are merely reflections of underlying documentation, and that because of this QuickBooks files typically need to be checked against the source documents for accuracy. *Id.* at * 3. However, because the *Pollack* case involved allegations of "deliberate overbilling for work not done" the Court found that the QuickBooks files should be compared against the underlying invoices and found that in those circumstances production of QuickBooks files outweighed the burden of production. *Id*. In fact, far from finding that QuickBooks files were not burdensome to produce, the Court noted that the plaintiffs in the case had offered to bear the expense of hiring a professional to extract that data. *Id.* Thus, Plaintiffs' own authority does not support that Plaintiffs' broad claims unrelated to specific entities support the production of QuickBooks files that contain the same information that can be obtained in other sources.

    c. ***Plaintiffs Do Not Meet Their Burden with Entity Specific Arguments***

22. Plaintiffs make a smattering of entity specific arguments, none of which meet Plaintiffs' burden of establishing that the QuickBooks should be produced.

TO COMPEL PRODUCTION OF QUICKBOOKS FILES**     PAGE 9

      i.    <u>WPE Kids, WPE GP, and WPE Holdings</u>

23. Plaintiffs argue that the QuickBooks files of WPE Kids, WPE GP, and WPE Holdings should be produced because of the disgorgement award in the underlying Bailey suit. Mot. ¶ 27. However, the fact that an entity *received funds* does not support finding the QuickBooks files when the QuickBooks files of the entity subject to the disgorgement order have been produced. Further, Defendants have already or will produce documentation showing capital contributions, rendering the QuickBooks files duplicative.

      ii.    <u>EFO Management, Entity Manager, PMC Irrevocable Trust, CME Trust, MHE Trust, and WPE Trust</u>

24. Plaintiffs seek the QuickBooks files related to EFO Management, Entity Manager, PMC Irrevocable Trust, CME Trust, MHE Trust, and WPE Trust based on allegations of attempts to shift liability through the 2011/2012 Redemption Agreement. *See* Mot. ¶¶ 28–31. Plaintiffs do not indicate how the QuickBooks files would reflect any shift in liability. Indeed, Plaintiffs indicate that it was unclear from the already produced QuickBooks files whether the 2011/2012 Redemption Agreement was effectuated. *Id.* ¶ 30. Thus, it is unclear why additional QuickBooks files would do so.

      iii.    <u>EFO HMI and MDT2</u>

25. Plaintiffs state that there were "confusing" name changes and transaction related to EFO HMI that allegedly "shift[ed]" liability from Mr. Esping. Mot. ¶ 32. Plaintiffs mention that EFO GP's shole shareholder is MDT2. *Id.* n. 29. It is not clear what cause of action these allegations relate to or—just as notably—how the QuickBooks files would provide any information to support that cause of action. Accordingly, Plaintiffs fail to meet their burden of demonstrating relevancy.

    iv.      EFO Financial Group, Eminence and Eminence GP

26. Although Plaintiffs do not directly argue that EFO Financial Group, Eminence, and Eminence GP should fall within the Discovery Orders, Plaintiffs note that each was "one layer down" from the EFO Holdings, L.P.[9] and therefore the QuickBooks should be produced for the same reasons outlined in the Discovery Orders. *See* Mot. ¶¶ 33–36. However, the Discovery Orders **only** apply to EFO GP. *See* Exes. A, B.[10] EFO GP did not have an ownership interest in any of these entities ever. *See* Ex. D, Krupala Aff. ¶ 8. Beyond stating that the Discovery Orders should apply by analogy, Plaintiffs make no argument as to why the Discovery Order should be expanded to include EFO Holdings, L.P.[11] Thus, to the extent Plaintiffs are arguing these entities may fall within the Discovery Orders, Plaintiffs' requests should be denied.

27. Further, Plaintiffs fail to explain why producing the QuickBooks files for these entities would be relevant. For EFO Financial Group, Plaintiffs allege that the Trustee has an interest in 2015 bonuses and previous bonuses. Mot. ¶ 34. This does not relate to any cause of action and provides no basis for ordering the production of QuickBooks files. For Eminence and Eminence GP, Plaintiffs state that the Trustee has alleged the 2007/2009 Contribution Agreement was a 'sham'. *Id.* ¶ 36. However, Plaintiffs fail to explain what information would be contained in the QuickBooks files that would support this 'sham' allegation.

    v.      Green Series and JBJ

28. Plaintiffs argue that the QuickBooks files of Green Series and JBJ should be produced to show that certain transfers were for fair market to reasonably equivalent value. Mot.

---

[9] Defined in the Second Amended Complaint as the "Debtor". *See* SAC.
[10] As already stated *supra* Section C(a), Plaintiffs have known about transfer relating to EFO Holdings, L.P. no later than 2015. *See* Ex. E. Thus, no new information supports expanding the Discovery Orders.
[11] Even if the Discovery Order applied to entities owned by EFO Holdings, L.P., EFO Financial Group has not been owned by EFO Holdings, L.P. since 2006. Ex. D, Krupala Aff. ¶ 9. Similarly, EFO Holdings, L.P.'s ownership of Eminence was immediately distributed to the four remaining partners of EFO Holdings, L.P. in the 2007/2009 Contribution Agreement. *See* Ex. F, Contribution Agreement.

**DEFENDANTS' RESPONSE TO PLAINTIFFS' MOTION
TO COMPEL PRODUCTION OF QUICKBOOKS FILES**                        **PAGE 11**

¶ 38. However, Defendants have produced the basis for the fair market value calculations using third party information where possible. *See* Ex. D, Krupala Aff. ¶ 10. Further, the QuickBooks for these entities would not establish fair market value—nor do Plaintiffs allege they would. QuickBooks is a historical account of transactions and would not provide information about fair market value.

### D.    Estate's Interest in QuickBooks License is Irrelevant.

29.    Plaintiffs raise the argument that the Estate may have some interest in the QuickBooks license and therefore the Trustee could request turnover of the QuickBooks files. Mot. ¶ 42. Plaintiffs acknowledge that they are only requesting relevant QuickBooks files. *Id.* Without addressing the merits of whether the Trustee could request turnover of the QuickBooks files, Defendants point to the arguments already raised in this Response which demonstrate that Plaintiffs have not met their relevancy burden regarding the QuickBooks flies requested.

### CONCLUSION

WHEREFORE, PREMISES CONSIDERED, Defendants respectfully request that this Court deny Plaintiffs' Motion to Compel Production of QuickBooks Files.

DATE: June 6, 2023                                Respectfully submitted,

                                                          */s/ Christopher J. Schwegmann*
Christopher J. Schwegmann
Texas Bar No. 24051315
cschwegmann@lynnllp.com
**LYNN PINKER HURST & SCHWEGMANN, LLP**
2100 Ross Avenue, Suite 2700
Dallas, Texas 75201
Telephone: (214) 981-3800
Facsimile: (214) 981-3839

Mark Stromberg
Texas Bar No. 19408830
mark@strombergstock.com
**STROMBERG STOCK P.L.L.C.**
Campbell Centre I
8350 North Central Expressway, Suite 1225
Dallas, Texas 75206
Telephone: (972) 458-5353
Facsimile: (972) 861-5339

Gerrit M. Pronske
Texas Bar No. 16351640
gpronske@spencerfane.com
Jason P. Kathman
jkathman@spencerfane.com
Texas Bar No. 24070036
**SPENCER FANE LLP**
5700 Granite Parkway, Suite 650
Plano, Texas 75024
Telephone: (972) 324-0300
Facsimile: (972) 324-0301

**ATTORNEYS FOR DEFENDANTS**
(*Except for J. Hoffman & Co.*)

## CERTIFICATE OF SERVICE

This is to certify that on June 6, 2023, a true and correct copy of the foregoing document was served *via* CM/ECF upon the following:

| | |
|---|---|
| Mark Torian<br>mark.torian@championllp.com<br>CHAMPION LLP<br>2200 Ross Avenue, Suite 4500w<br>Dallas, Texas 75201<br><br>*Attorney for Defendants*<br>*John Hoffman &*<br>*J. Hoffman & Co.* | Hugh M. Ray, III<br>hugh.ray@pillsburylaw.com<br>Lawrence James Dickinson<br>James.dickinson@pillsburylaw.com<br>PILLSBURY WINTHROP SHAW PITTMAN LLP<br>909 Fannin, Suite 2000<br>Houston, Texas 77010-1028<br><br>*Attorneys for Plaintiffs* |
| Davor Rukavina<br>drukavina@munsch.com<br>MUNSCH HARDT KOPF & HARR, P.C.<br>500 N. Akard Street, Suite 3800<br>Dallas, Texas 75201-6659<br><br>*Attorney for Trustee* | Jordi Guso<br>jguso@bergersingerman.com<br>BERGER SINGERMAN LLP<br>1450 Brickell Avenue<br>Miami, Florida 33131<br><br>*Attorney for Defendants*<br>*(Except for John Hoffman &*<br>*J. Hoffman & Co.)* |

*/s/ Christopher J. Schwegmann*
Christopher J. Schwegmann

4854-6761-7640, v. 1