Jennifer G. Altman
Shani Rivaux
Pillsbury Winthrop Shaw Pittman, LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131
Tel: (786) 913-4900
*Counsel for the Plaintiffs*

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § | |
| | § | |
| EFO Holdings, L.P., | § | Case No. 12-37936-swe-7 |
| | § | |
| Debtor. | § | |

| | | |
|---|---|---|
| Scott M. Seidel, the chapter 7 Trustee, *et al.*, | § | |
| | § | |
| Plaintiffs | § | |
| | § | |
| vs. | § | Adversary No. 21-03043-swe |
| | § | |
| William Esping, *et al.*, | § | |
| | § | |
| Defendants. | § | |

## PLAINTIFFS' REPLY IN SUPPORT OF MOTION
## TO COMPEL PRODUCTION OF QUICKBOOKS FILES

4871-5428-8233.v4

TO THE HONORABLE SCOTT W. EVERETT, U.S. BANKRUPTCY JUDGE:

Plaintiffs [1] submit this reply in support of their *Motion to Compel Production of QuickBooks Files* ("Motion") [2] [Adv. Dkt. 400] and in opposition to *Defendants Response to Plaintiffs Motion to Compel Production of QuickBooks Files* ("Response") [Adv. Dkt. 409] support thereof state as follows:

1.    Defendants assert in their Response that "Plaintiffs seek to re-open discovery matters that were decided more than two years ago in the related Florida Proceedings Supplementary" (Response ¶ 1), as if to suggest that the Court's earlier ruling—in response to two separate motions for order to show cause necessitated by Defendants failure to comply with their discovery obligations—was somehow preclusive of further discovery. To be clear, it was not. The Florida Proceedings Supplementary, Texas Collections Case, and Texas Veil Piercing Case were consolidated in this action, putting all discovery issues properly before this Court. Discovery is open, and there is simply no basis to suggest that Plaintiffs are not permitted to obtain necessary discovery to establish their claims, including additional electronic discovery. The Supreme Court has oft acknowledged that the "simplified notice pleading standard *relies* on liberal discovery rules." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 512 (2002) (emphasis added). Thus, while the pleading standard has evolved over the years, the broad scope of discovery has not. Plainly stated, information is discoverable if it is "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1).

---

[1]  Scott M. Seidel, the chapter 7 Trustee ("Trustee") for the estate ("Estate") of EFO Holdings, L.P. ("Debtor"), the debtor in the above-styled chapter 7 bankruptcy case ("Bankruptcy Case") and Joe Samuel Bailey, Laserscopic Spinal Centers of America, Inc., Laserscopic Spine Centers of America, Inc., and Laserscopic Medical Clinic, LLC (collectively, "Judgment Creditors" and together with the Trustee, "Plaintiffs").

[2]  Capitalized terms used but not defined herein have the meanings ascribed to them in the Plaintiffs' Second Amended Complaint [Adv. Dkt. 312] ("Second Amended Complaint" or "SAC").

4871-5428-8233.v4

2.      The Fifth Circuit has consistently held that a party requesting discovery is entitled to, and may move to compel, requested materials provided the information is relevant and otherwise discoverable.  *See* Fed. R. Civ. P. 37; *Export Worldwide, Ltd. v. Knight*, 241 F.R.D. 259, 263 (W.D. Tex. 2006) ("[Rule] 37(a) [(3)(B)(iii) and (iv)] empowers the court to compel the production of documents . . . upon motion by the party seeking discovery").  Relevance under Rule 26(b)(1) exists where the request is reasonably likely to lead to the discovery of admissible evidence.  *Crosby v. La. Health & Indem. Co*., 647 F.3d 258, 262 (5th Cir. 2011).  "At the discovery stage, relevancy is broadly construed, and information is considered relevant if it 'encompass[es] any matter that bears on, or that reasonably could lead to other matter that could bear on, any issue that is or may be in the case.'"  *United States v. Planned Parenthood Fed'n of Am., Inc.*, No. 2:21-CV-022-Z, 2022 U.S. Dist. LEXIS 239969, at \*12 (N.D. Tex. Sep. 20, 2022) (quoting *Coughlin v. Lee*, 946 F.2d 1152, 1159 (5th Cir. 1991) (in turn quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978))).

3.      The suggestion that because the Florida Court entered two orders in response to Plaintiffs' motions for order to show cause (Motion, Exhibits C and D) precludes further discovery would violate the fundamental tenant of the liberal discovery rules, *to wit*:  whether the information is reasonably likely to lead to the discovery of admissible evidence.  The Response ignores this point altogether in favor of a less principled argument that should be dismissed out of hand (and one that is inconsistent with the orders themselves).

4.      Contrary to Defendants' suggestion that the "QuickBooks Issue Has Already Been Litigated" (Response at 1, 3-4), the Florida Court expressly preserved Plaintiffs' right to seek additional discovery, including QuickBooks files for other entities and other time periods.  *See* Order attached to Motion as Exhibit D, ¶ 5 ("**Should the documents and information provided**

**by EFO GP not be enough to satisfy Plaintiffs, Plaintiffs shall bring the matter before the**

**Court.")** (emphasis added).

5.      When Defendants failed to comply with the earlier July 2020 order, Plaintiffs

sought relief resulting in the Order dated May 12, 2021, a copy of which is attached to Motion as

Exhibit C.  Tellingly, the Court found:

> EFO GP owns the lone QuickBooks license for the Entities [referring essentially to
> the EFO Partnership].  EFO GP and the Entities utilize QuickBooks to record for
> all business transactions at the direction of Esping, Grammen, and Krupala as the
> sole administrator.  Based on the record before the Court, EFO GP has failed to
> produce the complete universe of QuickBook[s] files responsive to the July 2020
> Order.  In addition, the Court finds that the EFO GP's production of the portions of
> the QuickBooks files to this point, with insufficient documentary support or backup
> documentation does not fully comply with the July 2020 Order.[3]

Defendants were again ordered to produce the missing information.

6.      Notably, there is nothing in either Florida ruling that precludes Plaintiffs from

seeking additional information as needed.  As noted above, the contrary is true since the Florida

court expressly reserved Plaintiffs' right to do so as they deemed necessary.  As outlined in the

Motion, through their ongoing discovery efforts, Plaintiffs confirmed that Defendants—including

EFO GP—transferred assets between self-created entities to hinder, delay' and/or defraud their

creditors.  The Motion identifies specific examples of alleged sales, undocumented loans, and other

transactions that pre-date the initial trial court ruling issued in October of 2012 as well as those

that should have been disclosed on the Statement of Financial Affairs.  Had Defendants made the

appropriate disclosures, the Trustee, the Plaintiffs, and the Florida court would have been put on

---

[3]  The Florida court's ruling, after an evidentiary hearing, establishes Plaintiffs' point: the affairs are controlled by
the EFO Judgment Debtors' insiders, and there is one QuickBooks enterprise account that controls all of the various
entities.

notice that the EFO Judgment Debtors were involved in moving assets and the Court would have been able to take contemporaneous action to ensure those assets were not dissipated.

7.    Through post-judgment discovery Plaintiffs learned that Defendants created hundreds of entities—forming a complicated web of interrelated entities all controlled and operated through the same QuickBooks platform, by the same person (Defendant Krupala), and within the umbrella of the EFO Partnership—that allowed them to move cash and other assets between the various entities and to the EFO Judgment Debtors' insiders as they see fit.  Making matters worse, the evidence produced so far, and Defendants' own testimony demonstrates that their own records are unreliable, with even Defendant Krupala describing them as a "mess."[4]  *See* Exhibit D to Trustee's Original Complaint and Request for Injunctive Relief [Adv. Dkt. 1-5].  To understand the facts and bases of any of the alleged transactions, Plaintiffs need the requested information.

8.    Whether Defendants have unintentionally ignored corporate formalities or, as Plaintiffs allege, engaged in widespread intentional conduct designed to shield their assets from collection efforts, the need for the discovery is the same.  To date, after the Final Judgment, Plaintiffs learned that Defendants have multiple versions of certain key purported transfer agreements, each with different dates and making the same transfer in different years, email communications confirming transfers that Defendants claim never happened or if they did, the transfer occurred at a later time, loans and other transactions that are unsupported by any

---

[4]  Discovery often allows parties to reach common ground on issues when they learn about the strengths of an opposing party's position. *See, e.g., In re FEMA Trailer Formaldehyde Prods. Liab. Litig.,* 628 F. 3d 157, 163 (5th Cir. 2010) (addressing the loss of discovery that necessitated substituting bellwether plaintiffs).  The point being that if Defendants were so confident in their position that their conduct was legitimate and the transfers appropriate, they certainly would have no issue turning over QuickBooks files dating back to 2005 as there would be "nothing to see here."  After all, production of these materials merely requires exporting a file, something that creates no burden on Defendants whatsoever.

documentary evidence and many more badges of fraud. Many of these issues are outlined in detail in the Second Amended Complaint and in Plaintiffs' responses to the discovery served by Defendants. But one of two things (or both) must be true: Defendants either ignored corporate formalities in the handling of their affairs or they were intentionally hiding assets from their creditors including Plaintiffs.[5] In either case, Plaintiffs need the sought after QuickBooks files to properly prosecute their claims. The failure to produce this critical information is hindering Plaintiffs' ability to properly prepare for depositions and their experts' ability to perform a robust analysis so that this case can be tried on schedule.

9.     Oddly, Defendants have repeatedly argued to this Court that there is no merit to Plaintiffs' claims; if that were true, they would have no issue turning over the QuickBooks from nearly two decades ago and going forward. What possible prejudice would exist for these materials? None, that is, unless Plaintiffs' allegations are true, and Defendants are continuing to avoid collection efforts by preventing Plaintiffs from unraveling the complex web of transactions they created.

10.     By their Motion, Plaintiffs ask this Court to compel the following: (i) the QuickBooks file of fourteen (14) entities formerly owned by EFO GP, the Debtor's former general partner, that were excluded from prior productions (Exhibit A to the Motion) and (ii) the QuickBooks file of sixteen (16) Debtor affiliates that were used to keep assets from creditors (Exhibit B to the Motion). These requests target specific files that are limited in nature and that

---

[5] Defendants have oft suggested that they were not trying to hide assets from the Bailey Creditors, but, rather they were hoping to avoid liability in one of the largest Ponzi schemes in the nation at the time involving Thomas J. Petters, which notably the Debtor was also alleged to be involved in. Many of the same Defendants here, including the Debtor and William Esping, were also sued for fraud in the *McCommas* litigation in this Court. But if Defendants would attempt to shield assets in one fraud case, it would be naïve to think that they would not do so in another.

can be produced without any burden whatsoever. *Cf. Victor Stanley, Inc. v. Creative Pipe, Inc.*, No. MJG-06-2662, 2016 U.S. Dist. LEXIS 53252, at *1-11 (D. Md. Apr. 20, 2016); *see also Shamrock Chi. Corp. v. Wroblewski,* 162 N.E.3d 286, 294 (Ill. App. Ct. 2019) (affirmed lower court discovery order requiring production of bank records and QuickBooks files and holding that "this information is not of the type the drafters of our rules believed to be overly burdensome for parties to produce.").[6]

11.    Defendants attach a Declaration from Defendant Julie Krupala that is fraught with problems.  For example, Defendant Krupala states that there are no QuickBooks files for the entity San Clemente B Management, L.P. but provides no explanation as to why.  Was the information destroyed?  Did it exist and it was lost?  Were the entity's books of account kept by another organization?  Simply saying that there are no QuickBooks records is legally insufficient.  If it did exist and it no longer exists, it is incumbent upon Defendants to provide evidence of the reasons why it no longer exists, but they failed to do so.[7]

12.    Moreover, the submitted declaration fails to even address most of the entities identified on Exhibits A and B to the Motion.  And, notably, absent from the declaration is any evidence that it would be unduly burdensome to produce the materials sought by Plaintiffs or any prejudice that would be suffered were the data produced.  Standing alone it is clear that Defendants have failed to meet their burden of proof.  Defendant Krupala likewise does not assert that the sought after discovery is cumulative of information already provided other than one reference to Defendants allegedly having produced the QuickBooks files for EFO U-Park.  Nor does she clam

---

[6]  Here, although Plaintiffs believe that the entire QuickBooks file would be appropriate given their disgorgement award, they have narrowly tailored the specific files so as not to be overbroad or disproportional.  Notably, nothing in Defendant Krupala's declaration suggests to the contrary.

[7]  Most of the statements in the declaration simply have no relationship to the merits of the pending Motion.

4871-5428-8233.v4

that Plaintiffs can obtain the information from any other source: they cannot.  At bottom, the only source of the relevant information is the QuickBooks files, which Defendants—who claim that they have done nothing wrong—refuse to produce.

13.      Defendants also argue that Plaintiffs failed to demonstrate that the earlier discovery orders should be modified (Response at 7); this argument misses the mark.  It is not a function of "modifying" earlier orders.  The sole issues before this Court are (i) whether the sought after discovery is reasonably likely to lead to the discovery of admissible evidence and (ii) whether the burden of production outweighs any prejudice to Plaintiff.  The Response fails to include any evidence to rebut these two critical issues.  Indeed, the two prior orders make clear that Plaintiffs were encouraged to obtain all necessary discovery and to bring any further discovery issues to the Court.

14.      Moreover, as is clear in the second order (Exhibit C to the Motion) the Florida court found, after hearing evidence that the EFO Judgment Debtors' insiders have created a tangled web of entities, all of which are controlled through the use of one QuickBooks account.  This is consistent with Plaintiffs' allegations in the Second Amended Complaint.  As a result of their convoluted scheme and maze of transactions, Plaintiffs have the burden of unraveling the multitude of transactions.  To do that, they need the QuickBooks files, and nothing in the Response supports a different result.

15.      Although Defendants state in a heading that the files sought are duplicative (Response at 7-8), they nowhere (other than the one reference to EFO U-Park) identify where they previously produced the requested information.  That is because they have not, and their own response proves the point.  They spill significant ink on the fact that it's too burdensome to do so (without any evidentiary support), but if the information is duplicative that argument would make

4871-5428-8233.v4

no sense because they cite to only one example and the balance of the Response confirms the information has not been produced.  And, importantly, they fail to identify how the information is duplicative in any event.

16.    Merely arguing that the sought-after information is disproportionate and burdensome will likewise not carry the day, and the declaration provides no support for disproportionality or burden.  Counsel suggests that the "same information can be obtained through less burdensome means" and "Defendants have produced or have offered to produce other documentation that would show the same information as the QuickBooks files, but in a less intrusive and burdensome format: namely operating agreements and stock ledgers that contain the ownership transfer information sought by Plaintiffs" (Response ¶ 8).

17.    This position is noteworthy for several reasons.  First, the submitted declaration does not support the contention that it would be burdensome to produce the QuickBooks files.  So, there is no evidence to support the allegation.  And, because Defendants have produced certain QuickBooks files with ease, it is clear that the suggestion is not well taken as it merely requires exporting a portable ".qbm" file.  Second, the implication that it would be easier to round up various operating agreements and stock ledgers rather than copy a QuickBooks database is unsupported.  Certainly, Defendants did not include any evidence from Defendant Krupala or a third-party expert to support the assertion.  Third, it is laughable to suggest that operating agreements and stock ledgers would provide the same information as that which is in the QuickBooks files.  That is simply untrue, and no forensic accountant or other expert would support such a statement, which is why none is attached to the Response.  Fourth and finally, by their suggestion that they produce other information that "show the same information," Defendants

4871-5428-8233.v4

acknowledge that the information is relevant.  In short, Defendants inadvertently concede the

point, and the QuickBooks files should be produced.

18.     For the foregoing reasons, Plaintiffs respectfully request that Defendants be ordered

to produce the QuickBooks files of the Missing Entities and the Maneuvering Entities and such

other relief, at law or in equity, to which they may show themselves justly entitled.

Dated: June 20, 2023                    Respectfully submitted,

                                        **PILLSBURY WINTHROP SHAW PITTMAN LLP**

                                        By: _/s/ Jennifer G. Altman_
                                            Jennifer G. Altman
                                            Florida Bar No. 881384
                                            Shani Rivaux
                                            Florida Bar No. 42095
                                            600 Brickell Avenue, Suite 3100
                                            Miami, FL 33131
                                            Tel: (786) 913-4900
                                            jennifer.altman@pillsburylaw.com
                                            shani.rivaux@pillsburylaw.com

                                            -and-

                                            Lawrence James Dickinson
                                            Texas Bar No. 24105805
                                            Two Houston Center
                                            909 Fannin, Suite 2000
                                            Houston, TX 77010-1028
                                            Tel: (713) 276-7600
                                            james.dickinson@pillsburylaw.com
                                            baileycollections@pillsburylaw.com

                                        *Counsel for the Plaintiffs*

## CERTIFICATE OF SERVICE

This is to certify that on June 20, 2023, a true and correct copy of the foregoing was served via the CM/ECF system on all counsel of record (who are deemed to have consented to electronic service).

_/s/ L. James Dickinson_
Lawrence James Dickinson