Jennifer G. Altman
Shani Rivaux
Pillsbury Winthrop Shaw Pittman, LLP
600 Brickell Avenue, Suite 3100
Miami, FL 33131
Tel: (786) 913-4900
*Counsel for the Plaintiffs*

# IN THE UNITED STATES BANKRUPTCY COURT
# FOR THE NORTHERN DISTRICT OF TEXAS
# DALLAS DIVISION

| | | |
|---|---|---|
| In re: | § § | |
| EFO Holdings, L.P., | § § | Case No. 12-37936-swe-7 |
| Debtor. | § § | |
| Scott M. Seidel, the chapter 7 Trustee, *et al.*, | § § | |
| Plaintiffs | § § | |
| vs. | § § | Adversary No. 21-03043-swe |
| William Esping, *et al.*, | § § | |
| Defendants. | § § | |

## PLAINTIFFS' EXPEDITED MOTION AND REQUEST FOR STATUS CONFERENCE REGARDING DEFENDANTS JOHN HOFFMAN AND J. HOFFMAN & CO.

TO THE HONORABLE SCOTT W. EVERETT, U.S. BANKRUPTCY JUDGE:

Plaintiffs[1] move this Court for an expedited status conference to address issues relating to the unfortunate passing of Defendant John Hoffman. Mr. Hoffman wore many hats at Esping HQ, including as the principal of Defendant J. Hoffman & Co. (the "CPA Firm"), the accountancy firm that

---

[1] Scott M. Seidel, the chapter 7 Trustee ("Trustee") for the estate ("Estate") of EFO Holdings, L.P. ("Debtor"), the debtor in the above-styled chapter 7 bankruptcy case ("Bankruptcy Case") and Joe Samuel Bailey, Laserscopic Spinal Centers of America, Inc., Laserscopic Spine Centers of America, Inc., and Laserscopic Medical Clinic, LLC (collectively, "Judgment Creditors" and together with the Trustee, "Plaintiffs"). Capitalized terms used but not defined herein have the meanings ascribed to them in *Plaintiffs' Second Amended Complaint* [Adv. Dkt. 312] ("SAC" or "Complaint.").

4858-2347-8148.v7

was located at the Esping HQ suite for many years. Mr. Hoffman also served as Trustee of the PMC Revocable Trust.[2] As outlined below, an independent administrator has yet to be assigned for Mr. Hoffman's estate (the "Hoffman Estate"), which prevents Plaintiffs from substituting anyone to act on his behalf. Further, several issues raise concern and otherwise impact Plaintiffs ability to timely litigate the claims against Mr. Hoffman (or his estate) and potentially the CPA Firm including, without limitation, the preservation of evidence that was in Mr. Hoffman's possession, custody, or control or within that of the CPA Firm's possession, custody or control. Accordingly, Plaintiffs seek an expedited status conference with the hopes of obtaining the following relief from the Court:

(1) an order requiring counsel for the CPA Firm and for the Hoffman Estate to immediately inventory and provide a copy of that inventory to this Court and Plaintiffs that identifies: (i) the location of all documents, information and materials stored (including electronic records), (ii) the location of any hardware (computers, cell phones, etc. for Mr. Hoffman and each of the employees or others that were paid for by the CPA Firm), (iii) the existence of any recordkeeping software, and (iv) how each of the foregoing is being preserved;

(2) a representation from counsel for the CPA Firm and for the Hoffman Estate that: (i) all information has been preserved, (ii) counsel has obtained all relevant passwords to ensure the data can be accessed, (iii) any auto delete function has been disabled, and (iv) a litigation hold has been applied to all electronic data to prevent the automatic destruction of evidence;

(3) a representation from counsel for the CPA Firm and for the Hoffman Estate that: (i) no one has had access to any of the above since Mr. Hoffman's death on July 28, 2023, including any of the Defendants in this action, and (ii) no evidence has been deleted, removed, altered, modified, or tampered with in any way;

(4) given that counsel for Defendants in this action has confirmed that they do not represent Mr. Hoffman's family members, confirmation that Plaintiffs' counsel is permitted to contact members of the Hoffman family directly to determine whether they are willing to provide relevant information;

(5) a representation from counsel for the CPA Firm that no counsel for Defendants or any Defendant paid for, reimbursed, or were in any way involved in paying

---

[2] PMC stands for Perry, Madeline, Charlotte, the children of William and Heather Esping. This trust owns 25% of the membership interests in EFO Management, LLC, both of which are Defendants in this action. EFO Management's ownership interest in the Debtor within a year prior to the Petition Date was not disclosed in the Statement of Financial Affairs [Main Dkt. 45].

(6) an order requiring counsel for the CPA Firm and for the Hoffman Estate to provide proof of last known address of Mr. Hoffman including by providing a copy of his Drivers' License, Voters' Registration, or any other documents that would enable Plaintiffs to determine where Hoffman resided at the time of his death; and

(7) an order requiring the appropriate person on behalf of the CPA Firm to execute all necessary documents to enable Plaintiffs to obtain all forms from the Internal Revenue Service relating to the CPA Firm including all tax returns, Form 940s, Form 941s, IRS transcripts (tax return transcripts, tax account transcripts, record of account transcripts, wage and income transcripts and Verification of Non-Filing letter, to the extent that they exist), payment history of the CPA Firm and other documents that may assist Plaintiffs in obtaining the actual facts relevant to this lawsuit.

## I.  INTRODUCTION

1.     Mr. Hoffman and the CPA Firm were the long-time tax accountants for nearly all of the entities at Esping HQ. The CPA Firm was even located at Esping HQ and Mr. Hoffman served as the Trustee of at least one Esping family trust. Thus, Mr. Hoffman and the CPA Firm have highly relevant information to the pending dispute. Mr. Hoffman and the CPA Firm were scheduled to be deposed two days prior to Mr. Hoffman's unfortunate death. A week or so prior to the scheduled deposition then current counsel withdrew from the representation; counsel for the other Defendants appeared on their behalf and requested that the deposition be re-scheduled. Plaintiffs accommodated the request to postpone the scheduled deposition,[3] which was noticed for July 26, 2023. However, because two days later Hoffman committed suicide, Plaintiffs did not get the opportunity to depose Mr. Hoffman or the CPA Firm. As a result, substantial discovery relating

---

[3] Plaintiffs agreed to counsel's request out of professional courtesy, however, the request was unusual in light of the fact that counsel for Defendants has been involved with the case from the outset and they have been coordinating with counsel for Mr. Hoffman and the CPA Firm throughout.

4858-2347-8148.v7

to Mr. Hoffman and the CPA Firm remains and significant questions exist as to how that will be accomplished as outlined below.

2. Plaintiffs have serious concerns about the probate of the Hoffman Estate as well as certain representations regarding Mr. Hoffman's and the CPA Firm's location and preservation of data. The information bears directly on the claims of the Estate and thus the Trustee and the Bailey Creditors seek the Court's assistance to ensure that they are not prejudiced by Mr. Hoffman's unfortunate passing.

3. The issues involved may require a separate emergency motion for relief if the Court is unable to resolve this by simple status conference. This Court may hold a status conference at any time under 11 U.S.C. § 105 and Fed. R. Bankr. P. 7016 in the administration of justice and to determine how best to streamline proceedings to avoid cost or unnecessary delay or prejudice. Because of the issues involved, Plaintiffs have asked for expedited relief as they are concerned that their claims may be prejudiced otherwise.

## II. ARGUMENT

### A. *The Collin County Probate Proceedings*

4. Since Mr. Hoffman's passing, Plaintiffs have repeatedly requested that counsel, who had appeared in this action for Mr. Hoffman and the CPA Firm after Mr. Torian withdrew, advise whether a probate proceeding had been filed. By example, undersigned reached out to Mr. Pronske and Mr. Kathman on August 18, 2023, to follow up on an earlier request. That communication states in relevant part:

> First, I have repeatedly asked questions regarding Mr. Hoffman's death and how it will be handled in this litigation. There are a series of questions I have put in an email to you, which I have sent three times to get a response, but none has been received. Those issues—when/if a suggestion of death is being filed, whether a probate matter is being opened, etc.—directly impact our discovery schedule in this case. By example, because Mr. Hoffman is no longer available, we will now have to take multiple depositions of various individuals, both current and former

4

employees, since we do not have the ability to depose Mr. Hoffman. Further, we will be seeking additional written discovery (and potentially third-party discovery). Until we have the answers to the questions we have asked, we cannot do any of these things.

Attached as Exhibit A is a copy of this email exchange between Ms. Altman and Mr. Pronske. Having not received the information, counsel followed up again on August 21, 2023, attached as Exhibit B.

5. Despite multiple requests for notice of any probate action, counsel for Defendants never advised Plaintiffs that such an action had been filed. Because Mr. Hoffman's available residence address was in Dallas County, Plaintiffs regularly checked the Dallas County probate docket but found nothing. According to property tax records, later confirmed in two affidavits filed by family members in any unrelated matter, Mr. Hoffman was living in Dallas County at the time of his death. After checking other counties, Plaintiffs discovered that a probate proceeding was commenced on August 16, 2023 in Collin County, Texas. *See* Probate Docket attached as Exhibit C.

6. Upon learning that the probate action was filed—surprisingly in a county where there is evidence Mr. Hoffman did not reside—counsel immediately began reaching out to attorney Evaleen M. Davis, who filed the probate action on behalf of Mr. Hoffman's spouse, Suzanne Hoffman. Despite numerous attempts to obtain basic information regarding the probate of the Hoffman Estate and to ensure the preservation of relevant evidence, Ms. Davis did not respond to the first several emails; when she finally responded to one, her response was only: "What is your issue?" Attached as Exhibit D are those communications between Ms. Altman and Ms. Davis from August 23rd to September 6th.

7. Similarly, counsel for the CPA Firm and Mr. Hoffman before his death, when he finally responded to similar inquiries, including whether there was an objection to the Motion to

5

Substitute Party, he advised: "I do not represent Suzanne Hoffman. I have never spoken to her" and "I [Mr. Pronske] am not otherwise involved or knowledgeable in any probate-related matter." Attached as Composite Exhibit E are copies of those communications between Ms. Altman and Mr. Pronske.[4] Because counsel did not advise that the probate estate was opened and had not provided any other information after multiple requests, Plaintiffs took Mr. Pronske's statements to mean that he had no information, he was unaware of whether such action had been filed and that he had not communicated with Ms. Davis (particularly given that Plaintiffs had been requesting such information). Neither Ms. Davis nor any of Defendants' counsel ever provided notice that a probate action was filed.

### B.    *Contemporaneous Evidence Suggests Hoffman Lived in Dallas County*

8.      In filing the application at issue, Ms. Davis represented to the probate court that Mr. Hoffman lived in Collin County, Texas, at the time of his death and that venue was proper there. Tex. Estates Code Ann. § 33.001. Plaintiffs' investigations suggest that Mr. Hoffman lived in Dallas County at the time of his death, however.

9.      This evidence includes two affidavits (one by Mrs. Hoffman's brother (Harold) and the other by one of Mr. Hoffman's daughters); these affidavits were used in connection with the sale of the Hoffman home, which closed after Mr. Hoffman's death. Both affidavits state that Mr. Hoffman lived in Dallas County. These same affidavits state that Mr. Hoffman had "no unpaid debts at his death."[5] Attached as Composite Exhibit F are those affidavits. Given the statements

---

[4]   Defendants counsel finally filed a Suggestion of Death on August 28, 2023 [Adv. Dkt. 445]. Plaintiffs thereafter filed a Motion to Substitute Ms. Hoffman on behalf of the Estate of John M. Hoffman because at the time she was identified in Hoffman's Will as the person that would take on that role. [Adv. Dkt. 447]

[5]   As discussed below, at the probate hearing on September 28, 2023, Ms. Davis represented to the Court that Hoffman had alleged IRS liabilities, which contradicts the affidavits of the family members. These inconsistencies in the statements and documentary evidence have placed Plaintiffs in a quandary in trying to understand the actual facts and to move this matter forward.

6

and representations of Ms. Davis, Plaintiffs have asked for documentary evidence supporting the statements. Ms. Davis has since stated that she does not have any supporting documentation but was told that there are IRS claims.

10. During the hearing, the Collin County Probate Court inquired of Ms. Davis as to whether she had been paid, to which she responded yes, and when he inquired further about the amount, she stated that she was paid $8,600. When she was asked who paid those amounts, Ms. Davis thought, but could not say for sure, that half may have been paid by Mr. Hoffman's daughter by Venmo (but she really was unable to state where the balance of the payment came from) and she seemed to express that she really was unsure where any of it came from, frankly.

11. After learning that Ms. Davis was not being responsive to basic requests for information made by counsel for Plaintiff, the Probate Court ordered Ms. Davis to speak with counsel by phone that day. During that call, Ms. Davis repeated the statements regarding Mr. Hoffman's assets being subject to IRS liabilities to Ms. Altman and Mr. Bartolomei, and provided a bit more detail surrounding the issue, again based on what she was being told.

12. Specifically, during the call Ms. Davis explained that beginning in 2020 "some of Mr. Hoffman's clients stopped paying him" and that as a result Mr. Hoffman had a "payroll tax issue." Plaintiffs asked Ms. Davis to provide documentary evidence to support her statements and requested to speak directly to Mr. Hoffman family members to gain an understanding of the actual facts since Ms. Davis said she did not have any of the records support her statements at that time. The parties left the call with Ms. Davis stating that she would endeavor to get more information.

C. *The Collin County Address*

13. Adding to the growing questions surrounding the probate proceeding, undersigned counsel discovered that the address Ms. Davis used to open the probate matter that was supposedly where Mr. Hoffman resided at the time of his death was a house now (or formerly) owned by Ms.

Davis and/or Kenneth Rossi. Records Plaintiffs have found indicate Mr. Rossi is either Ms. Davis's current or former husband. Attached as Exhibit G is the document listing this house as Suzanne Hoffman's address; attached as Exhibit H is the document showing that it was owned by Ms. Davis but appears to have been transferred to Kenneth Rossi. In various records, Mr. Rossi is identified as Ms. Davis's husband. Given the affidavits from the Hoffman family members and the relationship between Ms. Davis and this residence, Plaintiffs have concerns about whether the probate was properly opened in Collin County and if venue is not proper there, why was it opened in that county.

### D. *No Independent Administrator Has Been Appointed*

14. After discovering the probate action and being unable to receive basic information, Plaintiffs began monitoring the probate docket. Among other things, Plaintiffs needed more information so that they could amend their Motion to Substitute Party once an independent administrator was determined so that they could have the proper party substituted in for the Hoffman Estate.

15. On August 16, 2023, Ms. Davis filed a copy of Hoffman's Last Will and Testament (the "Will") and an application for Letters Testamentary, naming Mrs. Suzanne Hoffman as the executor. However, after the initial filing, Mrs. Hoffman declined the appointment and, according to Court records, so did Mr. Hoffman's brother and a bank (NationsBank) that has merged with Bank of America (as had been laid out in the Will). Bank of America was not made executor, or apparently ever asked. Mr. Hoffman's son-in-law then agreed to take on the role—as of September 5, 2023—but then only three days later, he declined. Then Ms. Davis submitted that she would take on the role. A hearing to prove the Will was originally scheduled for September 11, 2023, but it was re-set for September 28, 2023. Plaintiffs' counsel attended the hearing.

16. During the September 28th hearing, among other things, the Probate Court questioned Ms. Davis why she would want to take on such a significant role given the Adversary Proceeding and her statements regarding the lack of assets in the Estate. Specifically, during the hearing, Ms. Davis represented that there were "tax liabilities" and "secret liens" and significant other liabilities such that she did not believe that there were any assets in the estate from which Plaintiffs would recover. She further stated that she did not know anything about this "little lawsuit," referring to the current Adversary Proceeding. When documents were requested to support the statements, Ms. Davis indicated that this is what she was being told, but she did not have any documents to support the claims.

17. Ultimately, the Probate Court did not assign Ms. Davis as the independent administrator and, instead, asked Ms. Davis to consider whether she wanted to take on the role. The Court left the position open pending further proceedings. Because no one has been appointed as representative of the Hoffman Estate, the case as to Mr. Hoffman is stalled. Mr. Hoffman was and is a critical Defendant that had direct reach into the inner workings of the Defendants and their business operations, and Plaintiffs need evidence that was in his possession as well as the possession of the CPA Firm.

### E.    *Continued Discussions with Ms. Davis and Mr. Pronske*

18. After the initial call with Ms. Davis that was required by the Probate Court, Ms. Davis stated that she would respond to Plaintiffs' counsel that week. When counsel had not heard from her, a follow up email was sent. Ms. Davis indicated that she would call Ms. Altman at 3 p.m. that day (October 3rd). At around 4:30 p.m. eastern time, Ms. Davis called she had invited Mr. Pronske to the call; she did not advise in advance she would be calling with him on the line. Counsel thought this was odd since Mr. Pronske denied having any involvement in the probate

matters and Ms. Davis denied that she had ever spoken to Mr. Pronske about the Hoffman matter during their initial call.

19. In any event, the substance of that conversation was documented in a contemporaneous email to Mr. Pronske and Ms. Davis. A copy of that email exchange is attached hereto as <u>Exhibit I</u>. It stated in pertinent part:

> Now, moving on to the more substantive discussion, in our conversation you stated, and I took notes, that you are "being told" that Mr. Hoffman had not paid payroll taxes since 2020. That he had a debt of $180,000, that he borrowed from two of his clients to pay to the IRS, and that he paid the IRS the $180,000 (which did not include interest or penalties) and then killed himself (after he had sent the amounts to the IRS). That after the lender(s) discovered he killed himself, they issued stop payments on the checks because the "loans" would not be repaid. That as a result, the daughter and son-in-law put the money in his account to cover the payments to the IRS (the $180,000). You also indicated that the IRS was not aware that these amounts had not been paid, and that there was no audit or actual lien issued by the IRS (but that the IRS may one day discover the alleged delinquency and, therefore, there is always a "lien"). I asked whether the person/entity that issued any of the loans was Mr. Esping or any person or entity related to him and Mr. Pronske said no. Assuming all or any of the above is true, the following documents must exist to support these claims: canceled checks to the IRS showing that the IRS was paid these amounts; loan documents with the clients that lent the money or at least some communications confirming that the amounts were loaned; documents showing that stop payments were issued; checks or wire transfer documents from the son-in-law and the daughter who you stated put the money in his bank account to cover the checks, account statements showing these transactions occurred. Further, his Company's tax returns and other documents will confirm that these amounts were either not paid or owed. These are just examples of some of the documents that would support the above. I have asked that you provide me with documents evidencing the above so that we can evaluate your statements and again demand that you do so. We would like to know who the two clients were that made the loans and any supporting documents.
>
> Further, I requested to speak to members of the Hoffman family. When I did, Mr. Pronske demanded that I tell him what I wanted to speak to them about and I stated that I do not need to share that information with him particularly given that he represents individuals with conflicting interests. He then stated "Well, then, I cannot speak to them", at which point I reminded him that he does not represent Mr. Hoffman, his estate or anyone in the Hoffman family. In short, Mr. Pronske, you cannot stop us from speaking with anyone in the Hoffman family; you are not their lawyer (or Mr. Hoffman's) according to your own emails. Ms. Davis, we again ask that you facilitate a discussion with members of the Hoffman family in order to move thing along. If you are unwilling, we will reach out directly if you are saying

> that you do not represent them or are not willing to facilitate the introduction. In each instance where I requested documentary evidence to support the statements being made, the response was that this is what you're being told. Rather than have you be the middle person, we want to speak directly with people who do know.

For completeness, Mr. Pronske's response is included. Ms. Davis did not respond and still has not responded.

20. As is the case with the other things described in this motion, the conversation left more questions than answers. To date, despite repeated requests, no documents substantiating Ms. Davis's claims have been provided to Plaintiffs.

### F. *Document Preservation*

21. After learning of Mr. Hoffman's death, Plaintiffs' counsel sent multiple emails both to counsel for Defendants and Ms. Davis after they learned of the probate matter demanding that all records, electronic or otherwise be preserved along with all computers, cell phones and other information that is relevant in this case. Attached as <u>Composite Exhibit J</u> are examples of those communications. During the October 3rd call, Ms. Altman again asked about preservation of information and evidence. The response raised concern, because instead of agreeing to preserve information, Ms. Davis demanded: Are Plaintiffs going to pay for storage costs. This conversation was documented immediately the call in the following email:

> Additionally, I reminded that there is a duty to preserve all evidence, electronic or otherwise. Mr. Pronske is counsel of record for the Company and is aware of pending litigation. When this issue was raised, you (Ms. Davis) asked me if I'm going to pay the storage costs relating to the information, to which I immediately responded that we would take possession of all of the documents, computers and any other evidence, to which Mr. Pronske said "no." It was curious that you asked this question given that the evidence being preserved, pursuant to a duty to do so, and the evidence is physically at the property of the EFO's corporate offices. There are no storage costs being incurred to my knowledge. I'm not sure if you were implying that there were or that EFO was demanding that you remove the documents, but, again, we will gladly take possession of the evidence to ensure that there is no spoliation. We have already noted to both of you that the duty to preserve the evidence exists as there is pending litigation. I also indicated to you that we could not even understand what those costs are until someone apprises us of the

11

> location of the information and the volume. By this email, we are asking that we be provided by Mr. Pronske, who represents the company, the specific location of all relevant evidence, the form of such evidence and what steps have been taken to preserve the same. Similarly, Ms. Davis, we would ask that you do the same vis-à-vis Mr. Hoffman's individual evidence that is relevant to the pending claims. I provided you with a copy of the Second Amended Complaint, but if you have questions about the type of information, I am happy to discuss with you.

See Exhibit I.

22. Importantly, Mr. Pronske and not Ms. Davis represents the CPA Firm, which is located within Esping HQ—in the same office suite—and the CPA Firm is a Defendant in this case. There is no need to substitute this Defendant. To the extent that Ms. Davis or the Hoffman Estate or Hoffman family have possession of cell phones, emails, and/or documents and information that Mr. Hoffman used in connection with the CPA Firm, that is information that counsel for the CPA Firm should be actively preserving.

23. Similarly, since Ms. Davis has indicated that she intends and applied for the position of independent administrator (and it was approved by members of the Hoffman family), she has an obligation to ensure the preservation of relevant evidence as well. To date, despite repeated requests Plaintiffs have not received adequate assurances that this has occurred. Rather, the conversation was perceived more of a threat to be paid for storage costs or the evidence would be destroyed. And, frankly, given that the documents and information are believed to largely be located at the Esping HQ, Plaintiffs have concerns about their security (including whether they have already been tampered with in some way).

24. Given the allegations in the SAC and all of the above, the surrounding circumstances cause Plaintiffs to have concerns including about potential spoliation of evidence. Plaintiffs accordingly seek the Court's intervention to assist in ensuring that all materials have been secured and have not been tampered with in any way.

### G. *Contact with the Hoffman Family*

25. During the call on October 3rd that was originally scheduled with Ms. Davis, Mr. Pronske asked why Plaintiffs wanted to speak to anyone in the Hoffman family, meaning specifically what would be asked of them. Mr. Pronske has since denied asking these questions. Nevertheless, when Ms. Altman declined to provide that information, as her email reflects, Mr. Pronske said that then she cannot speak to them. His response is included for completeness, but Plaintiffs never asked Mr. Pronske to facilitate a meeting with the Hoffman family, they asked Ms. Davis, again so that Plaintiffs can finally get some clarity about the facts and circumstances impacting their claims and the prosecution of the same. By this motion, Plaintiffs are asking that this Court confirm that they can speak directly to the Hoffman family, who are not represented by counsel for Defendants in this Adversary Proceeding.[6]

## III. CONCLUSION

For the reasons outlined herein, Plaintiffs believe an expedited status conference is necessary and the above relief should be entered. Plaintiffs are very concerned given Mr. Hoffman's and the CPA Firm's long-term relationship with many of the Defendants that critical evidence will be lost or destroyed. They are also concerned—hopefully unnecessarily—that the probate matter was filed improperly in Collin County, to hinder Plaintiffs' ability to obtain relevant evidence and information, potentially having the Hoffman Estate opened and closed without their knowledge. While Plaintiffs hope that this is not the case, for the above reasons, they are concerned and seek relief from this Court accordingly.

---

[6] To the extent that they are represented by counsel, Plaintiffs are unaware, but will ask that question to ensure that they are not communicating with individuals who are represented by counsel. Because this litigation has been contentious, they do not want to reach out without raising it with the Court for fear that Defendants will later make an issue of it in some way.

4858-2347-8148.v7

Dated: October 6, 2023	Respectfully submitted,

**PILLSBURY WINTHROP SHAW PITTMAN LLP**

By: */s/ Jennifer G. Altman*
    Jennifer G. Altman
    Florida Bar No. 881384
    Shani Rivaux
    Florida Bar No. 42095
    600 Brickell Avenue, Suite 3100
    Miami, FL 33131
    (786) 913-4900
    jennifer.altman@pillsburylaw.com
    shani.rivaux@pillsburylaw.com
    baileycollections@pillsburylaw.com

    -and-

    Hugh M. Ray, III
    Texas Bar No. 24004246
    L. James Dickinson
    Texas Bar No. 24105805
    Two Houston Center
    909 Fannin, Suite 2000
    Houston, TX 77010-1028
    (713) 276-7600
    hugh.ray@pillsburylaw.com
    james.dickinson@pillsburylaw.com

*Counsel for the Plaintiffs*

4858-2347-8148.v7

## CERTIFICATE OF CONFERENCE

Plaintiffs' counsel has attempted to confer numerous times with counsel regarding the matters made the subject of this motion, as evidenced by the exhibits attached to this motion. The parties have been unable to reach a satisfactory conclusion to the matter, and so this motion is presumed to be opposed.

                                                                                            /s/ Jennifer G. Altman
                                                                                            Jennifer G. Altman

## CERTIFICATE OF SERVICE

This is to certify that on October 6, 2023, a true and correct copy of the foregoing was served via the CM/ECF system on all counsel of record (who are deemed to have consented to electronic service), and to the following via the method indicated:

*Via U.S. First Class Mail, Postage Prepaid*
Evaleen M. Davis
1400 Preston Road Suite 400
Plano, Texas 75093
*Applicant for Independent Administrator*
*of the Estate of John M. Hoffman*

                                                                                     /s/ Jennifer G. Altman
                                                                                       Jennifer G. Altman